8 Cal.2d 303 (1937)
UNION BANK & TRUST COMPANY OF LOS ANGELES (a Corporation), Appellant,
v.
SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a Corporation), Respondent.
L. A. No. 15983. 
Supreme Court of California. In Bank. 
February 19, 1937.
 Loeb, Walker & Loeb, Herman F. Selvin and Walter S. Hilborn for Appellant.
 Jennings & Belcher, Mills, Hunter & Dunn, Edward C. Mills and Louis E. Kearney for Respondents.
 THE COURT.
 We granted a hearing and transferred this cause to this court after decision of the District Court of Appeal, Second Appellate District, Division One, because we entertained serious doubt concerning the question of whether the cashier's checks here involved were in truth "bearer paper". There are respectable authorities relied upon by appellant which would sustain their contention to the contrary, but we have concluded that the better reasoning looks to the result reached by the District Court of Appeal. In the first place, it is to be observed that the faithless officer in this case, was one of the cosigners of checks and that he was acting within his authorized capacity when designating the payees of the cashier's checks. Further, the rule discussed which converts what on its face appears to be negotiable instruments payable to a designated person into "bearer paper" is a limitation upon the liability of depositories because otherwise, those who put checks and drafts into circulation would have it in their power by collusive understandings incapable of proof to conduct illegitimate transactions and hold the depository liable upon proof of the forgery of the name of a payee never intended in fact to be a payee. An extended discussion of the case is not necessary by reason of the exhaustive opinion in the Goodyear case (Goodyear Tire & R. Co. v. Wells Fargo Bank etc. Co., 1 Cal.App.2d 694 [37 PaCal.2d 483]) referred to in the opinion of the District Court of Appeal, speaking through Mr. Justice Pro Tempore White, which we adopt as our opinion herein, as follows: *305
 "In the court below these actions were consolidated for trial, and are by stipulation combined for the purposes of this appeal."
 "Although there are two defendants, the facts and issues raised are so similar that the cases may be treated as if there were but one action. The two actions will, therefore, except when otherwise necessary, be referred to in the singular, such designation, for the purposes of this decision, including both actions."
 "Appellant sued respondent to recover the principal amount of 22 cashier's checks aggregating $17,965.26, all drawn by appellant upon itself as drawee, and delivered to one Guy G. Williams."
 "The controversy arises out of the following facts: Guy G. Williams, during the period here in question, from March 28, 1930, to November 22, 1932, was a director and the assistant secretary of the Walter H. Leimert Company, and a director and the assistant secretary of the Westside Land Company. These companies maintained bank accounts with the appellant, Union Bank. Under the arrangement existing between said companies and the appellant, Union Bank, two signatures were required on all checks drawn by said companies upon their respective accounts with the appellant, Union Bank. Williams was one of the authorized signers of checks for both companies. About December 1, 1932, Williams' employers discovered that he had misappropriated corporate funds. Of the amount of such defalcations that are in question here, Williams accomplished his perfidy in the following manner--he would prepare checks to the order of the appellant, Union Bank, drawn upon the accounts of his employers, and signing them himself, procured the necessary counter-signatures. These checks, properly signed and countersigned, he presented to appellant, Union Bank, and upon a written requisition signed by him on behalf of his employers, procured cashier's checks drawn by appellant upon itself to the order of the payee designated by Williams in the requisition. The payees of such cashier's checks upon which this action is predicated were H. M. Hawkins and Harry Christensen, both actual persons, either then or formerly known personally to Williams, but to whom Williams never delivered any of the checks in question. Instead, Williams himself in each instance endorsed the checks, first *306 in the name of the payee thereof and then in his own name and deposited the checks so endorsed to his own account in the respondent banks, after which the latter bank stamped each check with the clearing house endorsement, 'all prior endorsements guaranteed', and received from appellant, Union Bank, the amount of each of the aforesaid 22 checks, for which total amount, with interest, appellant sued respondent. It is conceded that at no time did Williams make any disclosure to the appellant, Union Bank, that he in fact intended to appropriate to himself the proceeds of the cashier's checks delivered to him, and appellant, Union Bank, made payment to respondent upon the faith of the guaranty of prior endorsements stamped on the checks by respondent bank, making no investigation to determine whether the signature of the original payee as endorsed on the checks was genuine. It further appears that during the entire period of Williams' defalcations, appellant, Union Bank, rendered monthly statements to Williams' employers, and as a part thereof returned to said employers all canceled checks, including those upon which the cashier's checks herein mentioned were obtained. After discovery of Williams' defalcations, appellant, Union Bank, without litigation, paid to Williams' employers the amount obtained by Williams through his aforesaid misappropriation of the cashier's checks. The trial court rendered judgment in favor of respondent, and from that judgment appellant prosecutes this appeal."
 "Appellant assails the judgment on several grounds, and we will first discuss the question raised by appellant as to whether the cashier's checks were bearer paper, negotiable by delivery, and whether the endorsement thereof by Williams of the payee's name constituted forgery of the character that operated to bind respondent; and also whether appellant was liable to its depositors for the issuing or cashing of these cashier's checks, or was a mere volunteer in making refund to its depositors without resorting to any defense it might have to an action by such depositors. If respondent's contentions on these questions are upheld, such ruling, in our opinion, would be determinative of this appeal."
 [1] "The first question, therefore, is: When is a check a 'bearer' check? The applicable statutory provision is subdivision 3 of section 3090 of the Civil Code, which reads as follows: *307 "
 " 'The instrument is payable to bearer--"
 " '..."
 " '(3) When it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable; ...'"
 "The outstanding case on this subject (Seaboard Nat. Bank v. Bank of America, 193 N.Y. 26 [85 N.E. 829, 22 L.R.A. (N. S.) 499]) lays down the rule that the intention to make the instrument payable to a fictitious person 'must ... exist as an affirmative fact in the mind of the drawer of a draft at the time of its delivery'. In the construction of this particular language it has been recognized that 'fictitious or non-existing persons' literally construed is not sufficiently embracive to cover all situations in which the instrument is 'bearer' paper within the meaning of that language. Thus it has been definitely established, and the rule has been consistently followed, that a check drawn to a payee who may be an actual existing person but who is not intended to have any interest therein is 'bearer' paper. In Bank of England v. Vagliano Bros., L. R. App. Cas. (1891) 107, at 152, we find the following: '... Where, then, the payee named is so named by way of pretense only, without the intention that he shall be the person to receive payment, is it doing violence to language to say that the payee is a fictitious person? I think not. I do not think that the word "fictitious" is exclusively used to qualify that which has no real existence.'"
 "In Norton et al. v. City Bank & Trust Co., 294 Fed. 839, 844, we find the following: 'Nevertheless, the law is now well settled that a negotiable instrument is drawn to a fictitious payee whenever the payee named in it has no right to it, and its maker does not intend that such payee shall take anything by it.' And again, in Snyder v. Corn Exchange Nat. Bank, 221 Pa. 599, 606 [70 Atl. 876, 128 Am.St.Rep. 780], the court says: 'The intent of the drawer of the check in inserting the name of a payee, is the sole test of whether the payee is a fictitious person, ... It is clear, then, that when the legislature declared that a check payable to a "fictitious or non- existing person" is to be regarded as payable to bearer, it meant a fictitious person to be one who, though named as payee in a check, has no right to it, or the proceeds of it, because the drawer of it so intended, and it therefore matters *308 not whether the name of the payee used by him be that of one living or dead, or one who never existed.' (Citing Phillips v. Mercantile Nat. Bank, 140 N.Y. 556 [35 N.E. 982, 37 Am.St.Rep. 596, 23 L.R.A. 584]; Coggill v. American Exchange Bank, 1 N.Y. 113 [49 Am. Dec. 310].) This line of reasoning was quoted with approval by this court in an exhaustive, learned and well-considered opinion prepared by Mr. Justice Roth sitting pro tempore in this court, in the case of Goodyear Tire & R. Co. v. Wells Fargo Bank, etc., 1 Cal.App.2d 694, 700, 701, 702 [37 PaCal.2d 483]."
 "Therefore, when, as in the instant case, Williams never intended that the proceeds of the cashier's checks should be delivered to the payees therein named, it became immaterial whose name or what name he directed be inserted."
 [2] "But, says appellant, the faithless employee, Williams, did not make or sign the cashier's checks in question, nor was he an employee of the appellant, Union Bank, which appears as drawer and drawee on the checks in question; that Williams did not sign, nor had he any authority to sign, any cashier's checks. But the answer to this contention lies in the fact that while it is true that the maker of the cashier's checks in question was the appellant, Union Bank, still it was the faithless employee's, Williams', intent that must govern, because the bank made the cashier's checks payable to the parties designated by Williams. The appellant's intent was to make the cashier's checks payable to the parties that Williams intended them to be payable to. Williams, therefore, was the real drawer and 'the person making it so payable' as to each cashier's check."
 [3] "Remembering that Williams was authorized to sign checks drawn on his employer's account at appellant Union Bank he therefore, within the scope of his authority, presented to appellant, his employer's banking depositary, checks of his employer drawn upon and payable to appellant. With these checks he purchased the cashier's checks sued upon; all of which were issued by appellant Union Bank upon the written requisitions of Williams' employer, signed by the former on behalf of the latter. The appellant Union Bank followed the instructions implicitly; it executed its cashier's checks to a payee designated by Williams, with the former of whom it was unacquainted, of whom it had no knowledge, and concerning whom it had no intent. Regarding the payee *309 named, appellant had no interest save that of following Williams' instructions, and the latter's intent was that a fictitious payee be named. Authorized as Williams was to sign checks drawn on his employer's depositary, if he had cashed such checks and obtained money, surely it would not be contended that the depositary would be liable to the depositor. How, therefore, can the depositary be held liable when, instead of obtaining cash on the checks, the faithless employee obtained cashier's checks? The intended fictitious payee was the creature of Williams' mind, and while the appellant Union Bank was the nominal maker of the cashier's checks, still Williams was the person who actually drew the bill and was the person making the cashier's checks payable to a fictitious payee; and since he acted within the scope of his authority, his act, intent and knowledge, although adverse to and a fraud upon his principal, are nevertheless binding upon the latter. In paying out in cashier's checks, appellant did what was intended by Williams, an intent binding upon his employer; and in our opinion, therefore, under the authority of the Goodyear case, supra, appellant had a perfect defense to any claim made against it by its depositor."
 "In the case of Rancho San Carlos, Inc., v. Bank of Italy, 123 Cal.App. 291 [11 PaCal.2d 424], 'the person making the check so payable' was not even a signer. The nominal maker signed a blank check and delivered it to an employee, thereby clothing the employee with power to designate the payee and fix the amount. The nominal maker did not know that the check was drawn to a fictitious payee. The trusted employee did. The court held the employee to be 'the person making the check so payable', saying, at page 295: '... and in principle the same rule should apply where the person who actually makes the check payable is expressly or impliedly authorized to complete it in that manner'. The court then goes on to cite other cases in which the name of the payee was left blank and afterwards inserted, in which it was held that the checks became 'bearer' paper upon the insertion of a fictitious payee by one other than the signer of the check."
 "To our minds, it is at once apparent that the Goodyear case and the instant case are identical down to the point of the presentation of the employer's checks to the appellant Union Bank by Williams. In the Goodyear case the defrauding agent demanded and obtained from the depositary the *310 amounts of the corporation checks in cash. In the instant case Williams elected to receive payment by means of a cashier's check in which he himself designates, and the bank writes in, a payee's name which is 'fictitious'. We thus see that the only difference between the cases is that in one the defaulting agent asked for and received cash, and in the other he asked for and received a cashier's check bearing a fictitious name."
 "Appellant attempts to distinguish the Goodyear case from the instant case, arguing that the checks here sued upon were not the checks of the depositor, but were cashier's checks purchased with the checks of the depositor; and further, upon the ground that Williams' fraud, while binding upon his employer, was not binding upon the appellant Union Bank because Williams was the officer and agent, not of appellant, but of the appellant's depositor. In our opinion, the attempted distinction is without merit. Under the authority of the Goodyear case, supra, the acts of the officer (Williams) of the depositor are held to be the acts of the depositor. In that case it was held that the officer of the depositor bound the depositor in procuring the payment of checks by the bank, although the checks were made to fictitious payees, and although the officer was acting in fraud of his employer. [4] We therefore conclude that the cashier's checks in question here were 'bearer' paper, negotiable by delivery, and the endorsement thereon by Williams of the name of a 'fictitious' payee did not constitute forgery of the character that operates to bind respondent."
 "In the Goodyear case, supra, the depositor was denied relief in a case where a faithless employee caused checks to be issued to a fictitious payee, endorsed the latter's name thereto, and obtained the amount of such checks from the depositor's bank. By the same token, we feel that in the instant case, where, instead of obtaining cash from the depositor's bank, the faithless employee, upon similar checks which he was authorized by his employer to sign, obtained cashier's checks, there rested upon the bank no obligation to restore to its depositor moneys so paid out, and the restoration by appellant Union Bank to the depositor of such sums constituted a voluntary contribution upon the part of such bank, not resting upon any legal obligation in the premises. In commenting upon such a rule, this court, in the Goodyear *311 case, supra, quoting with approval from Norton v. City Bank & Trust Co., 294 Fed. 839, 845, said that it is 'neither arbitrary nor fanciful, but it is both just and equitable. The owner of the fund trusts its agent. It tells the bank to pay out its funds on his order. As between him and the bank, the latter is bound to pay whomsoever he will. If any particular check is paid to a person whom he intended to receive it, the bank has done precisely what it was instructed to do. In such cases as that here involved, it is true that the agent has proved false to his trust, and some innocent person must be the loser. Should it not be the one who gave him the power which he misused?' That the faithless employee obtained cashier's checks, rather than cash as in the Goodyear case, from the defrauded employer's bank, does not, in our opinion, alter the rule."
 "In view of the conclusions reached, as aforesaid, it becomes unnecessary to discuss or decide other questions raised on this appeal."
 For the foregoing reasons, the judgment appealed from is affirmed.