**LOUISVILLE CREDIT MEN'S ASSOCIATION et al., Appellants,**

**v.**

**MOTORS INVESTMENT COMPANY, Inc. et al., Appellees.**

Court of Appeals of Kentucky.

July 2, 1965.

As Modified on Rehearing Oct. 8, 1965.

Carl K. Helman, William B. Cohen, Herman E. Frick, Louisville, for appellants.

Joseph E. Stopher, A. J. Deindoerfer, Charles I. Dawson, Louisville, for Motors Investment Co., Inc.

Rucker Todd, Louisville, for Louisville Trust Co., Executor of Estate of Charles Patrick, deceased.

O. Grant Bruton, Louisville, for First Nat. Lincoln Bank of Louisville.

STEWART, Judge.

The essential question presented for determination in this appeal is whether under the evidence introduced appellee, Motors Investment Company, was a holder in due course of two checks.

Between 1948 and 1957 Charles Patrick was the president and manager of appellee, Motors Investment Company, and the manager of Charles Patrick Insurance Service, two corporations controlled by V. V. Cooke of Louisville. In March, 1958, Patrick resigned as President of Motors Investment Company and also as manager of Charles Patrick Insurance Service. Later Patrick became the president of Charles Patrick, Inc. and of City Investment Company, Inc. Soon after Patrick's resignation from Motors Investment Company and Patrick Insurance Service, it was discovered he had embezzled the sum of $91,294 from these companies. To repay this indebtedness he delivered six checks either payable to or endorsed over to Motors Investment Company. These checks were deposited and credited to the account of Motors Investment Company at the Lincoln Bank and Trust Company (now First National Lincoln Bank and Trust Company) and were subsequently paid.

Louisville Credit Men's Association, under an assignment for the benefit of creditors of City Investment Company and Charles Patrick, Inc., brought this action against Motors Investment Company, The Louisville Trust Company, Executor of the Estate of Charles Patrick, deceased, and First National Lincoln Bank of Louisville to recover the amounts of two of these checks which were paid to Motors Investment Company in part satisfaction of Patrick's debt.

One check in controversy was a treasurer's check for $40,000 issued by The Louisville Trust Company on January 8, 1959, payable to the order of R. W. Simpson. It is assumed by the parties hereto this check was made payable to a nonexistent

person. The treasurer's check was purchased with a check drawn by Patrick against the account of Charles Patrick, Inc. in The Louisville Trust Company. It is undisputed that R. E. Cammack, a vice-president of The Louisville Trust Company who actually wrote out this check, did not know when he drew it that R. W. Simpson was a fictitious payee.

KRS 356.009 provides:

"The instrument is payable to bearer:

"* * *

"(3) When it is payable to the order of a *fictitious or nonexisting person*, and such fact was known to the person making it so payable."

The controversy concerning this statutory provision centers around the language of the subsection which requires, when a fictitious payee is involved, that "such fact was known to the person making it so payable." Appellants vigorously assert that this "person" is the one who actually draws the instrument rather than the nominal drawer (who may or may not have drawn the instrument), and that the requirement of this subsection has not been met, since though Cammack actually drew the instrument he did *not* know it was payable to a fictitious person.

This subsection was construed in Mueller & Martin v. Liberty Insurance Bank, 187 Ky. 44, 218 S.W. 465. In that case George Martin, who had authority to sign the corporation's (Mueller & Martin's) name to checks against its account, drew several checks on such account payable to a fictitious person. He endorsed them and cashed them at the Liberty Insurance Bank. This Court held that the phrase, "person making it so payable," meant the person who *actually* drew the check, namely, George Martin in that case.

In the instant case the perfidious employee went one step further by procuring a treasurer's check from a bank, made out by a bank officer to a fictitious payee. The question is not the one posed in the Mueller & Martin case, that is, which is the "person making it so payable" as between the employee who writes the check or the employer who is the nominal drawer. Rather, the question is which party is the "person" as between Patrick, who instructed the drawer bank how to draw the check, and the nominal drawer, the bank acting through Cammack. The Mueller & Martin case does not give us an answer to this question.

In Union Bank & Trust Company of Los Angeles v. Security-First National Bank, 8 Cal.2d 303, 65 P.2d 355, the Supreme Court of California was faced with a fact situation virtually similar to that disclosed in the instant case. That court was also called upon to state whether or not under a statutory provision, identical in phraseology with KRS 356.009(3), the "actual drawer" could be some one other than the nominal drawer. There the faithless employee, Williams, who had authority to draw checks on the account of his employer, drew checks on such account and with them procured cashier's checks drawn by the bank upon itself. Williams used the names of two actual persons, both known to him but to whom he never delivered any of the checks. Instead he forged the names of the payees as endorsers on the checks and appropriated the proceeds.

The California court held the checks were nevertheless made payable to fictitious persons because, even if the payees were actual persons, Williams did not intend them to acquire an interest in the checks. That court was of the view it was immaterial whose name or what name Williams directed to be inserted in the checks, as the payees in reality were named in the instruments for a fraudulent purpose.

In answer to the contention that Williams was not the actual drawer of the cashier's checks and the checks should not be treated as payable to bearer, the California court ruled that Williams' intent must govern on that point. It reasoned

that the bank followed implicitly the instructions of Williams; it executed its cashier's checks to payees designated by him, with whom it was unacquainted, of whom it had no knowledge, and concerning whom it had no intent to issue the cashier's checks otherwise than as directed. The court concluded: "Williams, therefore, was the real drawer and 'the person making it so payable' as to each cashier's check."

■ For the reasons stated in the California case, we believe the intent of Patrick, not that of Cammack acting for The Louisville Trust Company, should control. The latter must be considered the nominal drawer; Patrick must be considered the real drawer of the treasurer's check of $40,000. The Louisville Trust Company's sole intent was to make this check payable to the party to whom Patrick intended it to be made payable. We therefore hold this treasurer's check was made payable to bearer and in consequence was negotiable.

The second check in controversy was drawn on February 17, 1959, for $13,459 by Charles Patrick on the account of City Investment Company in The Louisville Trust Company and made payable to W. S. Heidenberg, Patrick's attorney. When this check was delivered by Patrick to Heidenberg the latter endorsed it over to Motors Investment Company to be applied as a payment on the embezzlements of Patrick.

Appellants insist that Patrick had no financial interest whatsoever in City Investment Company, against which this check of $13,459 was drawn, or in Charles Patrick, Inc., against which the $40,000 check was drawn. Appellants maintain these two companies were owned in their entirety by Thurston Cooke, a cousin and former employee of V. V. Cooke; that Patrick drew the two checks without any authority in order to settle an indebtedness arising from his admitted peculations; and that Motors Investment Company, at the time it accepted the two checks, knew, or by the use of reasonable diligence could have known, of the infirmity in the checks or of Patrick's defect of title as to them.

This case was tried before the adoption of the Uniform Commercial Code. The pertinent provision of the Negotiable Instruments Law, then in effect, which was applicable to the contention raised, was KRS 356.052(4). This subsection stated as one of the requisites of being a holder of an instrument in due course:

"That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Also, KRS 356.056 of the Negotiable Instruments Law clarified what was meant by notice of infirmity or defect of title in the following language: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Since appellants do not contend that Motors Investment Company had direct information that these checks were defective, the only method by which appellants could demonstrate that Motors Investment Company was not a holder in due course was to show that it, at the time it accepted the checks knew of such facts that its "action in taking the instruments amounted to bad faith." These facts, we believe, it failed to establish.

The knowledge which Motors Investment Company had concerning these checks, in January and February of 1959 when they were delivered, is fully set out by the trial court in its findings of fact. We quote thus from these findings:

"2. About the last of March or the first of April, 1958, both Charles Patrick and Thurston Cooke, in the office of Motors Investment Company, Inc., stated to V. V. Cooke, in the presence

of others, that Thurston Cooke had no financial interest whatever in either Charles Patrick, Inc. or City Investment Company, Inc., but that same were owned entirely by Patrick; and statements to that effect were repeated during 1958 to V. V. Cooke by both Patrick and Thurston Cooke; and prior to the receipt of the checks involved in this case, neither Patrick nor Thurston Cooke had ever informed V. V. Cooke that their prior statements were untrue and that Thurston Cooke did own the two companies.

"3. In April, 1958, Charles Patrick, while in conference with Ira Porter, Executive Vice Chairman of the Louisville Trust Company, concerning the granting of a line of credit to City Investment Company, Inc., stated that he owned all of the stock of that company and that Thurston Cooke had no financial interest therein. That statement was repeated on more than one occasion in 1958 by Patrick to Ira Porter, and on one occasion in 1958 when Patrick and Thurston Cooke were both present, Patrick made the statement to Ira Porter in the presence of Thurston Cooke that the latter had no financial interest whatever in City Investment Company, Inc., and that Thurston Cooke responded that that was true, that he would like to have an interest but that Patrick wouldn't let him have it.

"4. The accounting firm of Jones, Rowland, Nale, Mattingly and Cox was the accounting firm of Charles Patrick, Inc. and City Investment Company, Inc. from the organization of those companies, and on more than one occasion Patrick stated to Mattingly, of that accounting firm, that he owned all of the stock of City Investment Company, Inc.

"5. At the request of Ira Porter, Mattingly requested Patrick to get a letter from Thurston Cooke in respect of what financial interest he had, if any, in City Investment Company, Inc.

"6. Mattingly transmitted that request to Patrick and the latter transmitted same to Thurston Cooke, who wrote a letter to Mattingly stating unequivocally that he had no financial interest whatever in City Investment Company, Inc.

"7. The accounting firm made an audit of City Investment Company, Inc. as of December 31, 1958, and a copy of that audit was filed with the record, and it showed that the company had outstanding $162,000 of capital stock.

"8. The accounting firm made a net worth statement of Charles Patrick, personally, as of March 31, 1959, and that statement showed as one of the assets of Charles Patrick $162,000 of the capital stock of City Investment Company, Inc., thus showing him to be the owner of all of the outstanding stock of that company.

"9. The audit of City Investment Company, Inc. and the net worth statement of Charles Patrick, personally, as of March 31, 1959, were made for the use of the Louisville Trust Company, and copies of each were delivered to that institution.

"10. When V. V. Cooke found that the peculations of Patrick were going to amount to a good deal of money, he commenced to inquire to see what his chances were of recovering the money stolen; and prior to the issuance of any of the checks involved in this case, he talked with Ira Porter of the Louisville Trust Company for the purpose of ascertaining what financial interest, if any, Patrick had in City Investment Company, Inc., and he learned from Ira Porter the facts which the latter had learned as stated in Findings Nos. 3, 7 and 9."

The trial court concluded that Motors Investment Company became the holder in due course for value, and with no notice of any infirmity or defect of title, of the two checks, and in receiving them it was guilty of no bad faith. We are of the opinion the findings of fact and the conclusion reached are adequately supported by the evidence. See also CR 52.01. Furthermore, the $40,000 treasurer's check, drawn by the bank on itself, did not disclose that Charles Patrick, Inc. had any interest in it but, on the contrary, that it was solely a valid obligation of the bank.

Another contention of appellants is that there was a failure of consideration when Patrick paid Motors Investment Company $91,294, although he had only embezzled $16,902.75 from it. The record establishes that these checks were accepted by counsel for Motors Investment Company with the understanding that they would distribute this money to Motors Investment Company and Charles Patrick Insurance Service in accordance with their respective losses. Therefore, the agents of these corporations accepted these checks in consideration of the pre-existing debt owed them by Patrick. Since a pre-existing indebtedness can constitute value as was required by KRS 356.052(3) and defined by KRS 356.025, it is apparent that value was given for these checks.

This disposes of the principal controversy and we find it unnecessary to discuss other alleged errors related thereto.

Appellants contend, however, that the court in dismissing the complaint as amended erroneously adjudged in favor of the Louisville Trust Company, executor of the estate of Charles Patrick, on their claim against Patrick's estate. This contention has merit. It appears the allegations asserting a claim against the Patrick estate were not denied and the trial court, perhaps inadvertently, did not specifically pass upon this claim in its findings of fact and conclusions of law. The judgment must be reversed to the extent it dismisses the claim against the executor of the Charles Patrick estate.

The judgment is affirmed in part and reversed in part, with directions to enter an appropriate judgment on the claim of appellants against the Louisville Trust Company, executor of the estate of Charles Patrick.