[Civ. No. 31577.   Second Dist., Div. Four.   Aug. 12, 1968.]

UNITED STATES NATIONAL BANK OF SAN DIEGO, Plaintiff and Respondent, v. BANK OF AMERICA, Defendant and Appellant.

Robert H. Fabian, Harris B. Taylor, George J. Brusky, Jr., and James L. Williams, Jr., for Defendant and Appellant.

Howard H. Taylor for Plaintiff and Respondent.

COLLINS, J. pro tem.*—This appeal requires interpretation and application of laws, decisions and principles anent negotiable instruments[1] to a set of facts which are not compli-

---

*Assigned by the Chairman of the Judicial Council.

[1]The facts having occurred in December 1960, some four years prior to the effective date of the California Commercial Code (January 1,

cated and respecting which the litigants are substantially in agreement.

The pertinent facts are as follows: During the year 1960 Theodore Wm. and Juanita E. Doll had a joint checking account at the El Monte office of The United States National Bank of San Diego (hereinafter called plaintiff). On December 15, 1960, Juanita E. Doll drew a check on said account for $6,000 and on December 28, 1960, Theodore Wm. Doll drew a check on the same account for $3,000. In each instance the designated payee was "N.C.S." and each check was promptly delivered to one Milton R. Roberts, who within a day of its issuance took each check to the El Monte office of plaintiff bank. In each instance said office issued its cashier's check in the amount of the Doll personal check payable to "N.C.S." and delivered same to Roberts, who thereafter endorsed each cashier's check "N.C.S. Milton R. Roberts" and deposited same in a sole proprietorship checking account which he had opened at the Monterey Park branch office of Bank of America (hereinafter called defendant) or or about November 1, 1960, in the name of "N.C.S.,"—Roberts having represented to the bank that he was the sole owner of the fictitious firm name "N.C.S."

The original checks, after being exchanged for cashier's checks by plaintiff for the face amounts thereof, totalling $9,000, were debited to the account of the Dolls. Later the Dolls sued plaintiff to recover the $9,000 on the theory that the intended payee of both checks, N.C.S., was a corporation, that said corporation had never received the proceeds of the checks, and that the plaintiff could not legally debit their account because of forged endorsements. The Dolls recovered judgment on that theory for the amount of the two checks plus interests and costs. The record does not disclose that the bank offered any affirmative defense in its pleadings or at trial.[2]

In the present litigation, involving only the two banks, plaintiff seeks to recover from defendant the amount of the prior judgment on the basis of defendant's endorsement, which guaranteed the identity of the payee of the cashier's

1965), the statutory law applicable is the Uniform Negotiable Instruments Law as reflected in the provisions of California Civil Code, sections 3082-3266d prior to repeal, effective January 1, 1965.

[2]See *Otis Elevator Co.* v. *First Nat. Bank*, 163 Cal. 31 [124 P. 704, 41 L.R.A. N.S. 529]; *Basch* v. *Bank of America*, 22 Cal.2d 316 [139 P.2d 1], for examples of possible legal and equitable defenses.

checks. The trial court incorporated in its formal findings the findings of fact in the earlier case of Doll v. United States National Bank (Los Angeles Superior Court, case No. EA C-514) to-wit: that at the time of issuance of their personal checks, the Dolls believed that the payee therein was a California corporation, known by name of National Construction Specialities, and that the designation "N.C.S." as payee was intended as an abbreviation of such corporation; that said checks were entrusted to Milton R. Roberts who received them for the use and benefit of said corporation, and that the Dolls did not intend that Roberts, individually, should receive the proceeds of the checks; that had they known that no such corporation actually existed, they would not have drawn the checks as they did; and that the Dolls should recover from United States National Bank the amount of the checks plus interest and costs.

The court further found that N.C.S. was non-existent as a corporation, that the intended payee of the cashier's checks, National Construction Specialities, a corporation, was non-existent and had no capacity to endorse; that Roberts' intent did not control as to the payee designated on the cashier's checks; that the intent of the Dolls controlled as to the payee designated on the cashier's checks. From these facts the trial court concluded that defendant was liable to plaintiff in the amount of the judgment in the earlier case of Doll v. United States National Bank.

The principal question presented by this appeal is: Whose intent governs in determining whether the cashier's checks were payable to an identifiable payee (and thus capable of forgery) or were payable to a fictitious payee (and thus subject to the law governing bearer paper)?

Both parties are agreed that the intent of plaintiff bank, the nominal maker or issuer of the cashier's checks, is not determinative of the identity of the payee. They acknowledge that *Union Bank & Trust Co.* v. *Security-First Nat. Bank,* 8 Cal.2d 303 [65 P.2d 355] correctly states the law on this point, the rationale of the rule being that an issuing bank (except possibly when issuing a cashier's check against its own funds and for its own unilateral purposes) has no personal interest in the person or entity named as payee.

Plaintiff contends, however, that the *Union Bank* case should not be followed insofar as it holds that the intent of the purchaser of a cashier's check controls as to intended

payee. Plaintiff argues that there is a distinction between one who ''purchases'' a cashier's check and one who merely ''exchanges'' a personal check for a cashier's check. Plaintiff's argument runs thus:

''Where, as in the instant case, a personal check that cannot be cashed because of an unknown payee, is *exchanged* for a cashier's check (payable to the same payee as the payee of the prior personal check for which it is *exchanged*), then, the intent of the *drawer* of the prior personal check governs as to who the payee is of the cashier's check obtained by the exchange.''

Plaintiff cites no legal precedent to support this argument.

Relying literally on the entire holding in the *Union Bank* case, defendant contends that the intent respecting payee which governs in this situation is that of the purchaser of the cashier's checks, namely, Roberts, who intended the cashier's checks to be issued in the name of N.C.S. so that they could be negotiated through an account which he carried in that name at defendant's branch bank. In the alternative, defendant argues that since plaintiff caused cashier's checks to be issued without inquiry as to the payee, it may not now complain that the endorsements thereon were by a nonexistent corporation. Defendant further argues that if they were so drawn, they were payable to bearer under Civil Code, section 3090, subdivisions (3) and (4), and, as such, could be negotiated by mere delivery, no endorsement being necessary for the purpose (Civ. Code, § 3111) ; and, in consequence, it would incur no liability on its guaranty of endorsements, which would be treated as surplusage. Defendant also invokes Civil Code, section 3142, as supplying plaintiff's admission as to existence and capacity of the payee, as well as constituting its undertaking to accept and pay the checks on presentment.

At the trial, plaintiff undertook to elicit testimony from one of its veteran vice-presidents, Mr. Boughton, as to the bank's custom in issuing cashier's checks. A defense objection was made that the custom of plaintiff bank was irrelevant and immaterial, that it was not binding on defendant and that no foundation had been laid that the custom was one observed by banks generally, or by any bank other than the El Monte branch bank of plaintiff. The objection was overruled and the witness was permitted to explain the bank's custom. The following is taken from the reporter's transcript:

''Q. Mr. Boughton, was it customary for the United States

National Bank to issue cashier's checks in exchange for personal checks?

"THE WITNESS: A. Well, we frequently have cases where a person will come in who is not known to us or a check may be made out to some company or corporation where we don't know that person presenting the check has authority to endorse for the company, and rather than stick our necks out we will exchange that for a cashier's check to the same payee without regard to who the payee might be. We are not interested and thereby throw the burden out, guarantee of endorsement, on any bank that that check may come back to us.

"                       .  .  .  .  .  .  .  .  .  .  .  .

"A. It's to relieve ourselves of the responsibility of determining whether or not that person has authority to endorse the check as it's made out.

"                       .  .  .  .  .  .  .  .  .  .  .

"THE COURT: In other words, if you issue the cashier's check, then it's your statement that any bank who cashes that has the duty or at least the responsibility of knowing the person who cashes it? They must know who they are cashing the check for?

"THE WITNESS: That is correct.

"BY MR. TAYLOR:

"Q. Is it encumbent [sic] on them to know that? Do they guarantee the endorsement?

"THE WITNESS: A. Yes. The endorsement is guaranteed to be a proper endorsement of the payee as shown on the check. It's the only way checks can be negotiated in the credit system."[3]

Here we have a situation where a bank declines to cash a check drawn against adequate funds on deposit because it is not sure of the payee's identity, but at the same time and without inquiry of any kind "exchanges" personal checks for its own cashier's checks payable to the identical payee.

We are left to speculate whether this custom obtains because the bank chooses to pass the risk to some other bank in complacent reliance that the latter's endorsement and guaranty will afford it all needed protection, or whether, as Mr.

---

[3]The admission of this testimony is not urged as error on this appeal, but it most certainly was self-serving. At most, Boughton's testimony tends to show only that plaintiff bank's intent as to the payee of its cashier's check was the same as the intent of the Dolls.

Boughton puts it—"rather than stick our necks out" an exchange of checks is effected without any inquiry as to identity of the payee of the customer's checks which were the consideration for the exchanged cashier's checks.

Section 3142 of the Civil Code (applicable at the time of the subject transactions in 1960) provides as follows:

"The drawer by drawing the instrument admits the existence of the payee and his then capacity to indorse; and engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it. But the drawer may insert in the instrument an express stipulation negativing or limiting his own liability to the holder."

█ In the circumstances of the case we find merit in defendant's reliance on section 3142 as a basis for placing some obligation on plaintiff.

Defendant further argues that the section imposed on plaintiff the obligation of ascertaining the identity of the payee of the cashier's checks, that since such payee was fictitious, the checks were negotiable without endorsement and, consequently, defendant may not be held liable on the basis of its endorsements. This argument is consonant with the teaching of the *Union Bank* case, *supra,* 8 Cal.2d 303. Plaintiff has not called our attention to any statute or case which promulgates the different rule for which it contends. We do not feel that the necessities of this case justify any erosion of the *Union Bank* case holding by qualifying, restricting or otherwise bypassing its application.

The *Union Bank* case has, long since, determined that the intent of the issuing bank is immaterial. As between the parties to this case, Roberts was, clearly, the purchaser of the cashier's check; it is of no importance what consideration moved between him and plaintiff, whether it was money, or his own check, or (as here) the check of a third party. Plaintiff sold Roberts a cashier's check for a consideration acceptable to it. The *Union Bank* case makes Roberts' intent as to the payee controlling; the proceeds of the check went, admittedly, to the payee he intended.

Plaintiff's willingness to deal at all with a check payable to a payee unknown to it should not enable it to shirk responsibility or thrust upon another a loss which it could easily have

avoided by adherence to the very caution which banks address to merchants and other persons who cash checks: "Know your endorser."

We are not insensitive to the prospect that our decision may be criticized as creating an inconsistency in the theories of liability imposed on United States National Bank in the two lawsuits in which it has been a party. On that point we make the non-consoling observation that the bank, when first sued, might have impleaded the Bank of America as a cross-defendant and the entire matter could have been resolved on the basis of an integrated record comprised of all the available evidence bearing on intended payee of each of the checks and cashier's checks, and the negligent acts, if any, of the Dolls as makers of the original checks,[4] plaintiff bank as issuer of the cashier's checks and defendant bank, respectively.

The judgment is reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 3, 1968.

---

[4]See 5B Michie on Banks and Banking (Perm. Ed., Rev. and Enlarged, 1950) section 280, Negligence of Depositor As Relieving Bank From Liability, and cases there cited.