[Civ. No. 34724. Second Dist., Div. Two. May 21, 1970.]

CHARLOTTE JERMAN, Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant, Cross-complainant and Respondent;
BEVERLY HILLS NATIONAL BANK, Cross-defendant and Respondent.

**COUNSEL**

Tankel, Toll, Lertzman & Leavitt, Tankel, Toll, Strassman & Leavitt and Arthur Toll for Plaintiff and Appellant.

Anderson, McPharlin & Conners and Peter R. Regal for Defendant, Cross-complainant and Respondent.

No appearance for Cross-defendant and Respondent.

**OPINION**

**ROTH, P. J.**—Appellant Charlotte Jerman (Jerman) and Mary Lee Cellini (Mary) had been friends for approximately 15 years. Sometime prior to October 5, 1965, Mary, in consideration of a loan to be made by Jerman, invited Jerman to participate to the extent of 10 percent of the profits which would result from the acquisition and subsequent sale by Mary and her husband Cesare Cellini of the fee title to a large parcel of property known as the Baywood Property in Morro Bay subject to an encumbrance of $2,500,000.

On October 5, 1965, Jerman contracted in writing (Agreement) to lend to Cellinis the sum of $200,000 without interest, for a period of one year. The Agreement recites that Cellinis and their associate Harry P. Verros, a trustee presumably for Cellinis, held a 90 percent equitable interest in Baywood, subject to a trust deed of $2,500,000. The evidence vaguely

indicates that the legal title to the 90 percent interest was held by American Commonwealth Co., Ltd., of which Clement A. Malone was the manager.

Although there is no evidence other than that stated in paragraph 3 of the Agreement (quoted *infra*), it seems implicit that Cellinis represented, and Jerman expected, that Baywood would be acquired and enough of it sold to repay the loan within one year and that thereafter she would receive 10 percent of the profits of the venture.

The Agreement disclosed that Adams Bolton, et al., had contracted with Cellinis to sell to them the remaining 10 percent interest in Baywood, thus permitting Cellinis to acquire 100 percent of Baywood, subject to the encumbrance. Legal title to the 10 percent was in the name of Bolton, although it appears he had interested associates. It was recited that it was necessary for Bolton to file an action in the Los Angeles Superior Court for declaratory relief "in order to clear title" to his interest in Baywood. The ". . . costs [to clear title] exclusive of attorney's fees are in excess of $300,000.00 . . . ."

In pertinent part the Agreement further provided:

"5. Party of the second part [Jerman] shall be repaid out of the first monies received either from condemnation award for the taking of part of the real estate for a state road by the State of California, by the partial sale of some of the land free from the mortgage, by the ultimate sale of the entire premises, by a second mortgage on said premises or by any other method of refinancing."

"3. The party of the second part [Jerman] will receive ten percent of the net profit from any sale of all of said property, but in no event shall said percentage be equivalent to any sum in excess of twice the principal of the amount so borrowed."

Jerman was not represented by an attorney in the transaction. The Cellinis were represented by a disbarred Illinois attorney named Teitelbaum.

Other than the recital in the Agreement to the effect that $300,000 would be necessary to clear title, the record does not show how much, if anything, Cellinis advanced for this purpose, or what amount or other consideration Cellinis invested in the Baywood transaction.

Periodic advances were made commencing with the approximate date of the Agreement until late in December of 1965, by Jerman in the total amount of $221,000. Shortly thereafter, the acquisition negotiations were aborted, default occurred, the holder of the trust deed presumably acquired

Baywood, although this is not clear from the record, and Jerman presumably lost the total amount of her advances. The Cellinis did not appear as witnesses. The only witnesses were Malone and Bolton named payees of cashier's checks advanced as part of the loan to Cellinis, endorsements to which were forged. These checks are the subject of this lawsuit and will be discussed *infra*.

It is clear that the transaction was rife with criminal fraud and it appears from the record that Cellinis and Teitelbaum, and perhaps others, have been, and are now, the subject of criminal proceedings.

The record shows, although the Agreement does not so provide, that Cellinis agreed to deliver to Jerman as security for her loan, 10 percent of the stock of a corporation they had or were about to organize for the purpose of taking title to Baywood. In addition, to reassure Jerman that the loan funds were actually being used to clear the property, Jerman was authorized to make the periodic advances to named payees instead of Cellinis. Further, during negotiations to clear title to Baywood, Cellinis caused a quitclaim deed to Baywood, apparently from the trustee of their 90 percent equitable interest as grantor to be delivered to Jerman and Mary as grantees. The quitclaim deed was deposited in Mary's safe deposit box and Jerman had no access to it without Mary.

It is clear that the security device and the loan advances in the form of cashier's checks to named payees who were designated in the Agreement as having an interest in Baywood, were utilized by Cellinis to assure and reassure Jerman that the loan money was actually being used for the purpose for which the loan was made, to wit, to clear title to Baywood.

The loan advances in issue were, as were many other such advances, in the form of cashier's checks purchased by Jerman from Bank of America National Trust and Savings Association (Bank of America) to payees named by Cellinis and were delivered to and receipted for by Cellinis.

The court found: ". . . Cesare and Mary Lee Cellini requested the plaintiff to deliver to them cashier's checks made payable to the said Clement A. Malone and Adams Bolton in the amounts hereinafter shown. The plaintiff then purchased from the Bank of America the following cashier's checks:

| Date | Check No. | Payee | Amount |
|---|---|---|---|
| October 22, 1965 | 245 50094 | Clement A. Malone | $ 7,500.00 |
| October 27, 1965 | 245 50188 | Clement A. Malone | 10,000.00 |
| October 29, 1965 | 245 50234 | Clement A. Malone | 7,500.00 |
| December 22, 1965 | 245 51442 | Clement A. Malone | 12,500.00 |
| October 29, 1965 | 245 50235 | Adams Bolton | 5,000.00 |

"4. The defendant, Bank of America, issued and delivered to plaintiff each of the said checks and the plaintiff thereafter delivered each said check to Mary Lee Cellini.

"5. On or about the time each said check was delivered to Mary Lee Cellini, a notation was made in writing on the back of the said written agreement, which, in substance, stated that Cesare and Mary Lee Cellini acknowledged receiving each check in the form noted above. Each said notation was signed by Cesare and Mary Lee Cellini."

The checks listed above and receipted for by Cellinis never reached the named payees. They were cashed at Beverly Hills National Bank (Beverly Bank) on endorsements apparently forged by Teitelbaum. Beverly Bank guaranteed the endorsements and was reimbursed by Bank of America.

The issue raised by Jerman in her complaint in which the sole named defendant is Bank of America, is single and apparently simple. Jerman alleges, and it was demonstrated that five cashier's checks totaling $42,500 purchased from Bank by Jerman, made to the order of named payees were paid by Bank of America, although neither the checks nor the money they represented were ever received by the payees. The court found and the record overwhelmingly shows that the endorsements thereon were forged. When Jerman discovered the forgeries she discussed the same with an officer of Bank of America who advised: "You will have to file a friendly suit against us to claim the money."

It is settled that a bank paying a check with a forged endorsement has in effect paid an unendorsed check. (Brady on Bank Checks (1963), p. 471.) Also, when a bank which issues a cashier's check to a named payee later pays it to another bank on a forgery of the payee's endorsement the issuing bank can recover the money from the bank to which it was paid. (Brady, p. 486.)

Jerman testified in part: "THE COURT: When did you learn . . . these checks were forgeries? THE WITNESS: . . . about August or September of 1966. THE COURT: How did you learn it? THE WITNESS: Mary Cellini and her husband were closely aligned with Al Titlebaum [sic] . . . called the mastermind of this very complicated, complex transaction which I didn't understand, and I am just beginning to understand.

"  .    .    .    .    .    .    .    .    .    .    .    .

"THE WITNESS: One day Mary Cellini told me she was no longer associated with Al Titlebaum [sic] and she . . . wanted me to obtain copies of the cashier's checks at the bank.

"  .    .    .    .    .    .    .    .    .    .    .    .

"THE WITNESS: I had just retained a lawyer and I told him that Mary Cellini was demanding copies of these checks and he said don't let her have them, get them yourself.

"He said, 'I'd be interested in the endorsement,' but in the meantime Mary Cellini had already gone to the bank. She had forged my name on a letter and through the strength of that letter the Bank of America, without consulting me, released all the copies of these cashier's checks, so I got a new set of them; Mr. Mapes was very embarrassed and very upset about the fact that the bank had already released these checks to Mary Cellini without my authority, so I got a set of checks myself and took them to my attorney and looked at them first with Mr. Mapes, and Mr. Mapes agreed with me that the signatures were forgeries."

The court found and the record shows that the named payees severally assigned any claim they had to the monies made payable to them to Jerman. Nothing in the record before us indicates that Jerman may not be collecting the money for the named payees or that she does not have some other arrangement with them. However, these assumptions are, in our opinion, immaterial.[1]

■ Bank of America was both the drawer and the drawee of the cashier's checks. They were negotiable instruments. It was not privy to any contract between Jerman and Cellinis. It contracted with the purchaser Jerman that the checks would be paid to named payees. Since the checks were paid on forged endorsements, Bank of America has an undoubted liability to the purchaser of the checks directly—or to the named payees.[2] (Com. Code, § 3419, subd. (1)(c); *Harry H. White Lbr. Co.* v. *Crocker-Citizens Nat. Bank*, 253 Cal.App.2d 368, 376 [61 Cal.Rptr. 381].)

On the factual situation generally outlined above, it would appear that Bank of America is responsible to Jerman on its contract unless the checks

---

[1] The trial court found: "18. Clement A. Malone and Adams Bolton both assigned all of their right, title and interest in the said cashier's check to the plaintiff."

[2] Although the checks were never delivered to the payees, the rights of the payees to the checks or their right to make the respective assignments to Jerman of the funds represented by the checks, is not raised or questioned. In fact, the trial court in its conclusions of law (equivalent to findings) states: "11. The defendant, Bank of America, upon issuing the said cashier's checks to the plaintiff, impliedly agreed to pay the proceeds of the said cashier's checks only upon the proper endorsements of the named payees.

"12. The payment of the proceeds of the said cashier's checks by the Bank of America upon the forged endorsements of the named payees was a breach of the implied contract with the plaintiff.

". . . . . . . . . . .

"14. The endorsement on each said check purporting to be that of the named payee were ineffective under Section 3405(c), Commercial Code."

in question were made to fictitious payees (Com. Code, § 3405). The evidence abundantly shows and the trial court found they were not.[3]

On the recited facts, Bank of America impliedly authorized Jerman to deliver or withhold delivery of the checks to the payees named therein. (*Burke* v. *Mission Bay Yacht Sales,* 214 Cal.App.2d 723, 730 [29 Cal. Rptr. 685].)

If Jerman had lost the checks before delivery to the named payees, Bank of America, if it thereafter paid the same on forged endorsements, would undoubtedly have been liable to Jerman or the named payees. (Com. Code, § 3419, subd. (1)(c); *Harry H. White Lbr. Co.* v. *Crocker-Citizens Nat. Bank, supra.*) Jerman did not lose the checks, but acting as an ordinarily prudent person would under the then existing circumstances of her dealings with Cellinis, delivered the checks to Mary for delivery to the named payees. Unless this admitted conduct of Jerman was negligence and such negligence was the proximate cause of payment of the checks, on forged endorsements, or Jerman was in some other manner estopped, Bank of America was responsible on its contract with her not to cash checks on forged endorsements. There was no claim or showing of estoppel and the trial court in one of its conclusions of law states:

"16. The plaintiff was not negligent and is not precluded from asserting lack of authority for the endorsements within the meaning of the provisions of Section 3406 of the Uniform Commercial Code."

The trial court predicated its judgment against Jerman and in favor of banks on the theory that Jerman was not damaged and that her action against Bank of America is premature. We proceed to analyze that conclusion.

Bank of America answered Jerman's action to recover on the checks with specific denials. Concurrently it cross-complained against Beverly Bank

---

[3]In its conclusions of law, the trial court states:

"4. At all times material herein, the plaintiff intended that the proceeds of each said check should be paid to the respective payee designated therein."

The court also found: "6. None of the said checks . . . were delivered to Clement A. Malone or Adams Bolton, respectively, nor did anyone acting under their authority . . . have possession of these said checks.

"     .     .     .     .     .     .     .     .     .     .     .     .

"10. Although, at the time that plaintiff procured the said checks, she had not met Adams Bolton or Clement A. Malone, both Adams Bolton and Clement A. Malone were real persons and both, either personally or through corporations with which they were associated, claimed an interest in the Baywood Property. Plaintiff had learned of their existence from Cesare and Mary Lee Cellini and other persons prior to the time that she procured the checks."

See also footnote 2, *supra.*

charging that Beverly Bank had guaranteed the forged endorsements and was therefore responsible to it. Beverly Bank defended by specifically denying the allegations of the cross-complaint and so far as is pertinent here, pleaded by special defense that Bank of America ". . . cannot and will not incur any liability to [Jerman] for which [Bank] can seek indemnity against this . . . cross-defendant," and "That pursuant to . . . 3406 of the Uniform Commercial Code . . . [Jerman] was negligent . . . contributing to the making of the allegedly unauthorized endorsement and is consequently precluded from asserting the lack of authority against the cross-complainant . . . ." It has already been pointed out that the trial court specifically found there was no negligence as defined by Commercial Code section 3406.

The trial court in a cryptic decision, said: "Plaintiff was the implied agent of the Cellinis for the payment of monies to payees of the checks in question. Plaintiff was not indebted to said payees. The cashier's checks purchased by plaintiff from defendant bank for the payment of said monies were forged,[4] and the defendant bank paid said monies to persons other than the named payees of said checks. Plaintiff has suffered no actual loss or damage by reason of the breach of the agency agreement with the Cellinis. Therefore, plaintiff has failed to prove a cause of action against defendant bank and her action is premature. The plaintiff's action against defendant bank will be dismissed without prejudice. By reason of the decision in the main case, the cross-complainant will take nothing against the cross-defendant."

The trial court repudiated the separate defense of section 3406 of the Commercial Code pleaded by Beverly Bank, but adopted its theory that Jerman "suffered no . . . damage by reason of the breach of the agency agreement with the Cellinis," apparently having been persuaded that Jerman owed the money represented by the forged checks to Cellinis or that Cellinis had a cause of action for the money represented by the forged checks which they had not pressed or that Cellinis had not as yet contested the fact that they owed the money to Jerman. In pertinent part the trial court concluded:

"9. The plaintiff has suffered no damages to the date of the trial by reason of the said agency agreement because the plaintiff has not sued, nor has suit been threatened by Cesare and Mary Lee Cellini.

"10. Having suffered no damages to the date of the trial, the plaintiff has failed to prove a cause of action against the defendant, Bank of America, and her action is, therefore, premature."

---

[4]The *checks* were not forged. The *endorsements* were forged.

Judgment was entered in favor of Bank of America and against Jerman and in favor of Beverly Bank as against Bank of America.

Jerman appeals from the judgment. Bank of America does not appeal from the judgment in favor of Beverly Bank.[5]

There is nothing in the record to show that Jerman ". . . has suffered no damages . . . by reason of said agency agreement . . . ." Jerman was not the agent of the Cellinis. On the contrary, abundant evidence shows they were her agent and she was their dupe.

The purchaser of the checks, Jerman, did, pursuant to the Agreement, make advances to Cellinis in the form of checks to named payees to accomplish a mutual objective set out in the Agreement. She did not expect Cellinis to retain the money. She expected and Cellinis represented that the named payees would get it. If the expected purchase of Baywood had been aborted, as it probably was, after the checks here in question had been entrusted to Cellinis for delivery to the named payees, it would have been the duty of Cellinis to return the checks to Jerman.

Each of the named payees claimed an interest in Baywood. Similar checks purchased by Jerman had been theretofore delivered to them in the same manner. The checks for security reasons were drawn to the named payees who had the 10 percent interest in the Baywood Property. The money was for the specific purpose of eliminating the interest in Baywood of the named payees. If Bank of America were not involved, Cellinis, since they had receipted for the checks as advances under the Agreement, would owe the money represented by the checks to Jerman. Such a hypothetical result, however, does not mean that Jerman cannot recover from Bank of America on its contract with her that it would not pay the checks on forged endorsements (footnote 2, *supra*).

Nor does the conclusion of the trial court that Jerman "was not indebted to said payees" have any relevance to the contract between Jerman and Bank of America. If the checks had been gifts to the named payees, or had been wrongfully delivered to the named payees, Bank of America could not immunize itself from its contract with Jerman not to honor a forged endorsement by claiming, even if it could substantiate the claim, that Jerman owed the money to Cellinis or that she didn't owe it to the named payees.

If Cellinis themselves had forged the checks, the fact that Cellinis would be liable to Jerman under the Agreement between them and Jerman does not absolve Bank of America from the contract it made with Jerman.

---

[5]On oral argument it appeared that the two banks have an arrangement between them as to their respective liability to each other.

Cellinis are not parties to this action, they did not intervene. This court is not required to speculate as to the outcome of any suit which may be brought by Jerman against Cellinis or by Cellinis against Jerman. There is nothing in the evidence to indicate even remotely that Cellinis have a lawsuit against either bank and we are not required to speculate that any such action would be brought or that it could be successfully maintained.

The judgment is reversed and the cause remanded to the trial court with instructions to enter judgment in favor of Jerman against Bank of America.

Appellant to recover costs on appeal.

**FLEMING, J.**—I concur.

In my view the cause of action presents a relatively straightforward claim for breach of contract, whose nature has been obscured by the multiplicity of parties and the complexity of their relationships with one another during the course of a complicated fraud. Our concern deals solely with the payment of five bills of exchange, specifically five cashier's checks purchased by Mrs. Jerman (purchaser) from Bank of America (drawer and drawee) payable variously to Malone or Bolton (payees).

The purchaser of a cashier's check, in return for the money he gives the bank, acquires the promise of the bank to pay a specified sum to a named payee on presentation of the check. In issuing a cashier's check the bank enters a direct contractual relationship with the purchaser, both in its capacity as drawer and as drawee. In the present case the bank did not fulfill its promises to pay the amount of the checks to the named payees, and it thereby breached its contracts with the purchaser. The bank's breaches of contract were complete, and the purchaser became entitled to rescind these contracts and secure judgment of restitution for the consideration she had paid the bank. (Civ. Code, §§ 1689, 1692.) Since the right of the purchaser to recover her consideration is based on contract she has no need to rely on tort claims for conversion, either her own or those of the payees. Hence defenses available in conversion and the measure of damages for such claims are immaterial.

Malone and Bolton can scarcely be categorized as fictitious payees. They are real persons with real interests in the Baywood property, and their genuine existence presented a facade of reassurance to Mrs. Jerman which enabled the Cellinis to develop their scheme to defraud. The intention of Mrs. Jerman as to who should get the money is controlling here, not the intention of the Cellinis, because it was she who supplied the names of the payees to the drawer bank. (*Union Bank & Trust Co.* v. *Security-First Nat. Bank,* 8 Cal.2d 303 [65 P.2d 355]; *United States Nat. Bank* v. *Bank of*

*America,* 264 Cal.App.2d 871 [71 Cal.Rptr. 6].) On this point I accept the finding of the trial court that Mrs. Jerman intended the proceeds of these checks to go to Malone and Bolton in order to promote the venture conjured up for her by the Cellinis.

**HERNDON, J.**—I concur in the conclusion that the judgment herein must be reversed for the reason that said judgment is based entirely upon the erroneous conception of law that the liability of a drawee bank to its customer arising from its payment of negotiable instruments on forged endorsements is dependent upon the proof of damages required in a conventional action for breach of contract. However, I dissent from the conclusion that the record establishes respondent's liability as a matter of law and that the trial court should be directed to enter judgment in favor of appellant. In my opinion, the judgment should be reversed and the cause remanded for a new trial.

In order to justify reversal with directions, the prevailing opinion adopts selected portions of the trial court's findings of fact and conclusions of law which are favorable to appellant and some of which I regard as either erroneous or highly questionable. Especially in a case such as this which has been decided upon a completely erroneous theory or conception of the law, I submit that the reversal should operate not only to vacate the judgment but also to set at large the determination of all the legal and factual issues tendered by the pleadings and by the evidence. (Cf. 3 Witkin, Cal. Procedure (1954) Appeal, § 187, pp. 2384-2385, and decisions cited.)

Furthermore, it appears that during the trial the court below made erroneous rulings adverse to respondent's efforts to prove that appellant intended to constitute the Cellinis as her agents in the transaction, that it was the Cellinis who supplied the names of the payees, and that the Cellinis never intended that the named payees should receive the proceeds of the five checks involved in this case.

Appellant and the Cellinis entered into a joint venture which contemplated the acquisition and sale of the Baywood property and a sharing of the profits therefrom. In all that they did, or purported to do, in pursuit of the purposes of this joint venture, the Cellinis in a very real sense were acting as appellant's agents.

As the majority opinion correctly recites, the Cellinis were represented by a disbarred Illinois attorney named Abraham Teitelbaum. Each of the five cashier's checks involved in this case bears what purports to be the endorsing signature of Liz Teitelbaum placed beneath the forged signature of the named payee. And as the majority opinion further recites: "It is clear that the transaction was rife with criminal fraud and it appears from the

record that Cellinis and Teitelbaum, and perhaps others, have been, and are now, the subject of criminal proceedings." The inference seems to me almost unavoidable that the Cellinis delivered the checks to the Teitelbaums pursuant to the criminal conspiracy to defraud alluded to in the majority opinion.

The evidence disclosed by the record in this case is sufficient to provide exceedingly strong support for findings (1) that appellant constituted the Cellinis as her agents in the transaction involving the purchase and the use of the cashier's checks; (2) that the Cellinis supplied appellant with the names of the payees; and (3) that the Cellinis never intended the named payees to have any interest in the checks or their proceeds. Such findings, if made, would invoke the "fictitious payee" rule: "An indorsement by any person in the name of a named payee is effective if . . . (c) An agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest." (Com. Code, § 3405.)

If the Cellinis, who supplied the names of the payees, were appellant's agents and never intended that the named payees should receive the checks or the proceeds thereof, then the bank did not incur any liability when it honored them regardless of who endorsed them. This rule is not inapplicable merely by reason of the fact that the named payees were "real" persons. (*Union Bank & Trust Co.* v. *Security-First Nat. Bank,* 8 Cal.2d 303 [65 P.2d 355]; *Goodyear Tire & Rubber Co.* v. *Wells Fargo Bank etc. Co.,* 1 Cal.App.2d 694 [37 P.2d 483]; *Pacific Indemnity Co.* v. *Security First Nat. Bank,* 248 Cal.App.2d 75, 88 [56 Cal.Rptr. 142].)

Commercial Code, section 4406, subdivision (4), provides that ". . . The burden of establishing the fact of such unauthorized signature or indorsement or such alteration is on the customer." There is a serious question in my mind whether this burden is met merely by showing that the named payees did not endorse the checks or whether the customer must also show that the person who supplied the names of the payees intended that such designated persons would actually receive the checks and the proceeds thereof.

In any event, it seems clear to me that the evidence offered by respondent relating to appellant's intent as disclosed by her business dealings with the Cellinis was relevant both to the issue whether the checks were drawn payable to fictitious payees and to the issue whether appellant is barred by her negligence under the provisions of section 3406 of the Commercial Code.

A petition for a rehearing was denied June 15, 1970. Herndon, J., was of the opinion that the petition should be granted. The petition of the defendant, cross-complainant and respondent for a hearing by the Supreme Court was denied July 16, 1970. Wright, C. J., did not participate therein.