99 N.J. Super. 538 (1968)
240 A.2d 682
THE REVEREND STUART F. GAST AND ELIZABETH T. GAST, PLAINTIFFS-APPELLANTS,
v.
AMERICAN CASUALTY COMPANY OF READING PENNSYLVANIA, A BODY CORPORATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 1968.
Decided March 13, 1968.
*539 Before Judges GOLDMANN, LEWIS and CARTON.
Mr. Richard T. O'Connor argued the cause for appellants (Messrs. Dittmar, Dittmar, Goldberg, Cerrato & McGovern, attorneys).
Mr. Gerald M. Zashin argued the cause for respondent (Messrs. Zashin & King, attorneys).
The opinion of the court was delivered by CARTON, J.A.D.
Plaintiffs Gast appeal from a judgment in favor of defendant insurance company based upon *540 a jury verdict of no cause for action. They attribute the result to erroneous instructions the trial judge gave the jury.
Plaintiffs brought the action to recover a fire loss of $3,435.92 under an insurance policy issued by defendant, covering premises which plaintiffs had contracted to sell to Mark and Gertrude Hanna. The policy, which had been procured by the Hannas pursuant to their obligation under the contract, insured them "as purchasers under the contract as their interest may appear," and, under its standard mortgagee clause, provided that "loss, if any, on building items shall be payable to Stuart and Elizabeth Gast."
On January 7, 1965 a fire damaged the property and the amount of the loss was agreed upon at $3,435.92 through Sidney Rosenbaum and Co., a public fire adjuster. On March 31 defendant issued a draft in that amount, drawn upon itself, and stating on its face "payable thru Berks County Trust Co., Reading, Pa. upon acceptance by American Casualty Companies."
The draft was payable to the Hannas, the Gasts and Sidney Rosenbaum and Co. According to the date stamped on the back of the instrument, it was presented to the bank on April 29, 1965. The proceeds of the draft were paid to persons other than plaintiffs, who never received any of the proceeds or any payment on the loss from defendant. The Hannas, defaulting on the contract, absconded, leaving the property in its damaged condition. Presumably they were responsible for the forging of plaintiffs' signatures as indorsers.
Defendant denied that it had any liability by reason of the forgery of the indorsements on the draft and, in addition, alleged that plaintiffs had contributed to the forgery by their negligence and were thus precluded from recovery. At the conclusion of the testimony in the course of which the facts recited above were established without substantial dispute, the trial judge instructed the jury that plaintiffs had an insurable interest under the policy and charged the applicable law as follows:
*541 "* * * A drawee is liable for payment to a person whose name had been forged unless the person was subsequently negligent in contributing to the forgery. Therefore, the factual problem, members of the jury, in this problem reduces itself to one of alleged negligence on the part of the defendant, in their manner of payment and too, the alleged contributory negligence on the part of the plaintiffs under the facts of this case, and these factual issues, of course, will be for your determination. * * *" (Emphasis supplied)
We conclude that the charge as given was erroneous, both on the issue of defendant's liability as drawer-drawee to plaintiffs on the forged indorsements and on the issue of plaintiffs' contributory negligence.
The underscored language is a misconception of the law regarding the elements of defendant's liability. The draft was drawn upon defendant and was executed by defendant. As both drawer and drawee defendant had the responsibility to make payment to the named payees on the instrument. That the draft was "payable thru Berks County Trust Co., Reading, Pa." upon acceptance does not alter that responsibility. See N.J.S. 12A:3-120.
The nature of defendant's obligation is set forth in the statute. It is not grounded upon negligence.
N.J.S. 12A:3-419 provides in pertinent part:
"(1) An instrument is converted when
* * *
(c) It is paid on a forged indorsement.
(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument."
The statute created an absolute right to recover in favor of plaintiffs (absent negligence on their part as discussed below) upon proof that the draft was paid on the forged indorsements. Plaintiffs' indorsements were concededly forged. It follows that defendant, having paid the draft, was rendered liable for the conversion in the face amount.
*542 Comment 3 to N.J.S. 12A:3-419, by the draftsmen of the Uniform Commercial Code, makes it clear that the above analysis is correct. That comment states:
"Subsection (1) (c) is new. It adopts the prevailing view of decisions holding that payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise of dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion." (Emphasis added)
There being no dispute as to the basic facts, plaintiffs' right to recovery (apart from defendant's defense that plaintiffs had contributed to the forgery) was fully established. It was therefore error to instruct the jury that plaintiffs were required to show that defendant was negligent.
The element of negligence enters into this case by virtue of N.J.S. 12A:3-406 which provides, in pertinent part:
"Any person who by his negligence substantially contributes to * * * the making of an unauthorized signature is precluded from asserting the * * * lack of authority against * * * a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."
An "unauthorized signature" includes a forgery. N.J.S. 12A:1-201(43). Taking N.J.S. 12A:3-406 in conjunction with N.J.S. 12A:3-419(1) (c), it appears that, although plaintiffs had established conversion of the draft by defendant, the latter had available to it the defense that plaintiffs were guilty of negligence which substantially contributed to the forgery.
This was the defense that defendant attempted to establish. As noted, the trial judge had charged:
"A drawee is liable for payment to a person whose name had been forged unless the person was subsequently negligent in contributing to the forgery." (Emphasis added)
*543 He refused to give the following instruction:
"A drawee is liable for payment to a person whose name has been forged unless that person was subsequently negligent in contributing to the forgery." (Emphasis added)
Neither the instruction as given nor the plaintiffs' requested instruction accords with the statutory language or its meaning. The substitution in the charge actually given of the word "subsequently" for the statutory language "substantially" materially altered the meaning of the statute. It made the defense of plaintiffs' negligence a bar to a recovery only when such negligence occurred after the payment on the forged indorsements. We do not so read N.J.S. 12A:3-406. We note that the error in this case was compounded by reason of the further instruction to the jury that no matter how slight plaintiffs' negligence might have been, if it proximately contributed to the final result, there was a sufficient defense under the statute.
Plaintiffs' requested instruction on this issue was properly rejected for the reason that it also altered the meaning of the statute. Plaintiffs' request stated that the defendant must prove plaintiffs' negligence to a substantial degree, i.e., more than ordinary negligence. The language of the statute cannot be read to support such an interpretation; it states plainly that it is the contribution to the forgery rather than the negligence that must be substantial.
The meaning of the phrase "substantially contributes," as used in U.C.C. § 3-406 (N.J.S. 12A:3-406), has not yet been established by the courts of this State. In fact, only one reported case has been found on the subject. In Gresham State Bank v. O & K Construction Co., 231 Or. 106, 370 P.2d 726, 372 P.2d 187, 100 A.L.R.2d 654 (1962), the Oregon Supreme Court said (100 A.L.R.2d, at p. 665):
"The requirement that the negligence `substantially contributes' to the making of the unauthorized signature is necessary to satisfy the *544 test of factual causation; it is the equivalent of the `substantial factor' test applied in the law of negligence generally. See * * * Prosser on Torts, § 44, pp. 218-223 (2d ed. 1955)."
Reference to Prosser reveals that the "substantial factor" test is a formula employed to establish causal relation, similar to the older "but for" rule. In essence, it is a substitute for "proximate cause," preferred by some courts because it is more easily understood by laymen. See Prosser, Torts (3d ed. 1964), § 41, pp. 243-44.
We adopt the view of the Oregon Supreme Court that the phrase "substantially contributes" indicates causal relationship and is the equivalent of the "substantial factor" test applied in the law of negligence generally. See, e.g., Rappaport v. Nichols, 31 N.J. 188, 203 (1959). As the comments to U.C.C. § 3-406 point out, what constitutes negligence depends upon the circumstances of the particular case. "The most obvious case is that of the drawer, who makes use of a signature stamp or other automatic signing device and is negligent in looking after it."
We consider now whether the evidence adduced at the trial, tested by this standard, warranted submission of plaintiffs' negligence to the jury. The facts on this score were likewise substantially undisputed. Defendant issued the draft on or about March 31, 1965, made payable to the Hannas, to plaintiffs, and to the public adjuster, Sidney Rosenbaum and Co. The signature of Rosenbaum, the public adjuster, appears on the draft. The draft came into the possession of the Hannas in early April. Mr. Hanna brought the instrument to plaintiffs to sign and they refused to do so. Plaintiffs' attorney mailed it to the Hannas' attorney with a covering letter dated April 13, 1965, stating that the instrument was to be indorsed and returned to plaintiffs' attorney for deposit in accordance with a previous arrangement between the attorneys that Mr. Hanna would order repairs to the property and, upon approval of the work, the bills would be paid from the proceeds. Surplus, if any, was to be applied on account of the purchase price of the property.
*545 On April 15, 1965 the Hannas' attorney delivered the draft to his clients for the purpose of indorsing it in conformity with plaintiffs' attorney's instructions. Instead, on April 29, 1965 the draft was presented to the bank for payment with the forged indorsements and was paid by defendant through the collecting bank.
Defendant points to these circumstances as evidence of negligence on plaintiffs' part: that plaintiffs and another attorney who represented them knew, as early as May 10, that the Hannas' attorney had failed to hold the draft in escrow but had instead delivered it to the Hannas and nevertheless failed to notify defendant; that defendant was not told by plaintiffs either to withhold acceptance or stop payment until June 21; that a previous fire loss in 1964 had been paid in the same manner with no objection by plaintiffs as to how the second draft should be drawn, and that plaintiffs never submitted a proof of loss but allowed the Hannas to do so.
We fail to see how any of plaintiffs' conduct constituted negligence which substantially contributed to the forgery and payment on the forged indorsement. The action of plaintiffs' attorney in forwarding the draft to the Hannas' attorney for indorsement was entirely proper. It followed the accepted practice of mailing an instrument to another attorney to be signed by that attorney's client and returned pursuant to an escrow arrangement. Neither plaintiffs nor their attorney was required to anticipate that, as a result of this mailing in escrow, the Hannas might appropriate the draft or that plaintiffs' signatures would be forged.
Plaintiffs did write to defendant with respect to the draft on June 21, 1965 and asked that payment be stopped. Neither this letter nor the lapse of time is relevant or material on the issue of plaintiffs' negligence as being a substantial factor contributing to the forgery. Nor did the prior dealings between plaintiffs and the Hannas provide any basis for anticipating a forgery; the draft in payment for the prior loss had been indorsed by plaintiffs.
*546 Accordingly, the defense that plaintiffs had substantially contributed to the making of the unauthorized signatures was not supported by the evidence and this issue should not have been submitted to the jury.
Inasmuch as there were no other material facts in dispute and the question of plaintiffs' right to recover turned on the legal issues decided herein, the judgment is reversed and the matter remanded to the trial court for entry of judgment in favor of plaintiffs.