Harvey TWELLMAN,
Plaintiff-Respondent,

v.

LINDELL TRUST COMPANY, a corpora-
tion, Defendant, Third-Party
Plaintiff (Appellant),

v.

CONTINENTAL BANK & TRUST COM-
PANY, a corporation, Third-Party
Defendant (Appellant).

Nos. 35964, 35965.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 10, 1976.

Barnard, Baer, Lee, Timm & McDaniel, Michael J. Doster, Herbert E. Barnard, St. Louis, for third-party defendant (appellant).

Evans & Dixon, Ralph C. Kleinschmidt, Gerard F. Hempstead, St. Louis, for defendant, third party plaintiff (appellant).

Greenfield, Davidson, Mandelstamm & Voorhees, Lawrence N. Doreson, Alphonso H. Voorhees, St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

This is a civil action for money damages sustained by plaintiff when defendant, Lindell Trust Company (Lindell Trust), paid a Treasurer's check bearing a forged endorsement. Lindell Trust brought a third-party action against defendant, Continental Bank and Trust Company (Continental) alleging that Continental had guaranteed and warranted that the endorsement in question was genuine and that the endorser had the authority to endorse. At the close of all the evidence, the court sustained plaintiff's motion for a directed verdict and entered judgment against Lindell Trust for $50,000. The court also directed a verdict in like amount in favor of Lindell Trust against Continental. Both Lindell Trust and Continental appealed. In an opinion filed October 21, 1975, we affirmed the judgment in favor of plaintiff, but ordered that the amount be reduced from $50,000 to $14,500. Plaintiff then moved for a rehearing, which we granted.

At the rehearing, the parties argued two issues: (1) whether we had exceeded our authority by reducing the judgment as a matter of law and (2) whether plaintiff is a proper party to sue for conversion under § 400.3–419, RSMo 1969. After duly considering the arguments made upon the rehearing, we again determine that judgment should be entered for plaintiff against Lindell Trust and for Lindell Trust against Continental in the amount of $14,500.

We glean from the transcript that plaintiff lent one Michael Londe $50,000 for two (2) days under an arrangement whereby Londe would purchase and sell for a quick profit certain International Harvester vehicles. Since plaintiff knew that the loan was to be used to purchase International Harvester vehicles, he purchased, from Lindell Trust, a Treasurer's check payable to International Harvester and delivered the check to Londe, who, in turn, delivered his two day post-dated check to plaintiff to secure the loan. Not only did Londe's post-dated check "bounce," but also he forged the endorsement of the payee and cashed the Treasurer's check at Continental, which guaranteed prior endorsements and was paid by Lindell Trust.

Prior to cashing the check, Londe had taken the check to Roedel Brothers, Inc., an International Harvester dealer. He wanted to give the dealer the $50,000 check for a $4,000 truck and to receive the difference in change. However, Roedel Brothers, Inc., refused to accept the check because the payee was International Harvester.

In any event, the endorsement accepted by Continental was as follows:

"*Pay to the order of Michael Londe*
*Roedel Brothers Internation* (sic)
*Harvester Trucks*
(signed) *Carle* [sic] *Roedel*
(signed) *Michael Londe*" (Emphasis added.)

Continental accepted the check and added its own endorsement. The Treasurer's check was forwarded through the Federal Reserve Bank to Lindell Trust who paid out the $50,000.

From the evidence it is unclear who first questioned the Roedel endorsement, but eventually plaintiff obtained an affidavit from Carl Roedel stating he did not sign the check. Both the affidavit and the check through the Federal Reserve were returned to Continental, but Continental refused to reimburse Lindell Trust.

After having discovered that the check was not used for the intended purpose and that Londe's check had "bounced," plaintiff sought repayment from Londe. While not altogether successful, plaintiff did recover $35,500. However, plaintiff testified that he was not seeking reimbursement for the $50,000 transaction, but rather for any part of the $121,000 Londe owed him overall from other transactions. In any event, although plaintiff used the $35,500 to make payments on his own notes at Lindell Trust, he did not tell Lindell Trust which of his obligations owed to them it should apply the payment. Therefore, Lindell Trust applied the $35,500 payment to the $50,000 note which plaintiff had executed in exchange for the $50,000 Treasurer's check. This allocation reduced the balance due on the $50,000 note to $14,500. Subsequently, plaintiff paid, from his own funds, his entire indebtedness owed to Lindell Trust.

Despite Lindell Trust's application of the $35,500 from Londe to the December 15 note, plaintiff seeks in this lawsuit to recover the face value of the Treasurer's check, i. e., $50,000 from Lindell Trust for having paid out that amount over a forged endorsement. While we uphold the trial court's decision that Lindell Trust and ultimately Continental are liable to plaintiff as a matter of law, we reduce the amount of the judgment to $14,500.

■ Defendant Lindell Trust and third-party defendant Continental allege several points of error which we will discuss individually. First of all, we note Continental's contention that the directed verdict denied them their right to a jury trial under Art. I, § 22(a), Const. of Mo. 1945, V.A.M.S. But this constitutional provision for right of jury trial does not apply to questions concerning directed verdicts. *Auffenberg v. Hafley,* 457 S.W.2d 929, 934 (Mo.App.1970) and *Knight v. Calvert Fire Ins. Co.,* 268 S.W.2d 53, 55 (Mo.App.1954). A verdict may be directed for a plaintiff (who naturally has the burden of proof) in those rare cases where there are no genuine fact issues which should be submitted to the jury.

*Morris v. Reed,* 510 S.W.2d 234, 238 (Mo. App.1974); *Alaska Fed. Sav. & Loan Ass'n v. Hoffman,* 485 S.W.2d 118, 120 (Mo.App. 1972); *Auffenberg v. Hafley,* supra, at p. 934. In our case, after reviewing the evidence in the light most favorable to the defendant and third-party defendant, we find that there was no fact issue which could have been decided which would have supported a jury verdict against plaintiff. Therefore, the trial judge did not err in directing a verdict for plaintiff.

■ The first of the substantive arguments made by Lindell Trust and Continental is that they are not liable to plaintiff since their payment over the forged endorsement was not the proximate cause of plaintiff's losses. Plaintiff's loss is said to be due to his dealings with Londe and the failure of Londe's post-dated check of December 15, to cover plaintiff's note. It is true that if Londe's check had cleared Lindell Trust would have applied its proceeds to pay off plaintiff's $50,000 note of December 15 and plaintiff would have suffered no loss. But Londe's wrongdoing is not what is at issue in this case. We are concerned with the liability of two banking institutions who wrongfully dealt with a negotiable instrument. Defendants recognize that the Uniform Commercial Code (hereinafter referred to as U.C.C.) §§ 400.3–101 to 400.-3–307 RSMo 1969, governs liability wherever its specific provisions apply and they, in fact, cite several sections of Articles 3 and 4 as being applicable. In view of the purpose of the U.C.C. to promote uniformity and certainty and the negotiability of instruments such as the Treasurer's check in this case, we do not think that a collateral issue of proximate cause should apply. Though the U.C.C. sets out various defenses to suits on a negotiable instrument, it does not mention proximate cause. We feel that only the specific U.C.C. defenses should be considered in a suit on this instrument. If these defendants are liable on the $50,000 instrument under the U.C.C., then any possible unliquidated liability Londe might

have on another instrument or on a contract is irrelevant.

We note, however, that there is a recent Missouri case, *Union Fin. Co. v. Nat. Bank in North Kansas City,* 463 S.W.2d 70 (Mo. App.1970), which uses the proximate cause concept to relieve a bank from its liability for paying a check over a forged endorsement. In the Union Fin. Co. case, the plaintiff made a loan to a husband and wife by drawing a check payable to them jointly. The wife forged the name of the husband both on the endorsement of the check and on the promissory note and the security agreement which constituted the consideration for the loan. The plaintiff-drawer sued the drawee bank for paying the amount of the check over the forged endorsement of the co-payee husband. The court held that the bank was not liable since plaintiff's loss was proximately caused by the forgery on the note and security agreement, not the forgery of the check's endorsement. *Union Fin. Co.,* supra, at pp. 72, 74.

Our case can be distinguished on the facts from the Union Finance Company case since there, forgeries had occurred on three instruments (the negotiable note, security agreement and the check) all within the same transaction. Here, there was only one forgery on one instrument, the Treasurer's check—and plaintiff suffered a loss when the defendants paid that check over the forged endorsement. Furthermore, the Union Finance Company case although it was subject to the U.C.C., was based primarily on three pre-U.C.C. cases: *Public Loan Corp. of Warren v. Jacobs,* 144 N.E.2d 505 (Ohio App.1955); *Lincoln Building & Loan Ass'n v. Liberty Nat. Bank & Trust Co.,* 312 Ky. 282, 227 S.W.2d 191 (1950) and *Provident Sav. Bank and Trust Co. v. Fifth-Third Union Trust Co.,* 43 Ohio App. 533, 183 N.E. 885 (1932). The courts in all three of these pre-U.C.C. cases, as well as the *Union Finance Company* case, all seemed to have been heavily influenced by the fact that the

plaintiffs had been negligent in their own actions and then tried to hold the banks liable. As we stated above, we feel that the U.C.C. should govern whenever it is applicable. Section 3–406 (which will be discussed below) deals directly with the effect of a plaintiff's negligence on a payor bank's liability. We feel that that section should be the only negligence defense we should consider. Similarly, *Commercial Credit Corp. v. Empire Trust Co.,* 156 F.Supp. 599 (W.D.Mo.1957), aff'd 260 F.2d 132 (8th Cir. 1958) which Lindell Trust cites was decided prior to the enactment of the U.C.C. and therefore is not dispositive for the reasons given above.

Next, Lindell Trust and Continental contend that they have three specific defenses under the U.C.C., which should have been submitted to the jury. The first one we will discuss is § 3–406, which deals with negligence on the part of a plaintiff.

Section 3–406 of the U.C.C.,[1] provides as follows:

Any person who by his *negligence substantially contributes* to a material alteration of the instrument or *to the making of an unauthorized signature* is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument *in good faith and in accordance with the reasonable commercial standards* of the drawee's or payor's business. (Emphasis added.)

Defendants would have to prove three separate elements to come within the scope of this provision. They would have to show (1) that plaintiff was negligent; (2) that his negligence substantially contributed to the making of the unauthorized signature (i. e., the forged endorsement); and (3) that the payor Lindell Trust paid in good faith and in accordance with reasonable commercial standards of its business. After a careful review of the record, we conclude that the evidence of all the parties supports the trial court's finding that § 3–406 does not apply

---

1. All citations to the U.C.C. are found in Ch. 400, RSMo 1969.

as a matter of law. *Gast v. American Cas. Co. of Reading, Pa.*, 99 N.J.Super. 538, 240 A.2d 682 (1968).

▮ Defendants contend that plaintiff was negligent in dealing with Londe and entrusting a $50,000 check to Londe who was not the payee without thoroughly investigating him. They argue that plaintiff was negligent in succumbing to a scheme that amounted to nothing more than a "high class pigeon drop." In retrospect, plaintiff does appear to have been unwise in choosing to deal with Michael Londe. But the specific act of delivering a check to someone who is not the payee does not necessarily constitute negligence within the meaning of § 3–406. *Society Nat. Bank of Cleveland v. Capital Nat. Bank*, 30 Ohio App.2d 1, 281 N.E.2d 563 (1972) and *Jerman v. Bank of America Nat. Trust & Sav. Ass'n*, 7 Cal.App.3d 882, 87 Cal.Rptr. 88 (1970). Plaintiff was not required to anticipate a forgery. *Gast v. Am. Cas. Co. of Reading, Pa.*, supra. The evidence does not reveal anything which should have made plaintiff suspicious of Londe on December 15. His partner, Robert Kligman, had investigated Londe informally and had been repaid some money previously lent to Londe, plus a profit. Plaintiff and Kligman's C.P.A., who had had previous dealings with Londe, vouched for Londe originally.

Secondly, even if a jury could have found that plaintiff's actions here constituted negligence (which we do not think it could) it would also have to find that such negligence "substantially contributed" to the "making of the unauthorized signature," i. e., the forgery. The cases are somewhat in conflict in their interpretation of the phrase "substantially contributes" as used in § 3–406. Some courts insist that the phrase is equivalent to the precode phrase "proximate cause." See *Society Nat. Bank of Cleveland v. Capital Nat. Bank*, 30 Ohio App.2d 1, 281 N.E.2d 563 (1972); *Fargo Nat. Bank v. Massey-Ferguson, Inc.*, 400 F.2d 223 (8th Cir. 1968). The majority of courts recognize that "substantially contrib-

ute" relates not to "proximate cause" but to the substantial factor test which is generally regarded as broader than the "but for" formula used in proximate cause situations. See, e. g., *Dominion Construction, Inc. v. First Nat. Bank of Maryland*, 271 Md. 154, 315 A.2d 69 (1974); *Gast v. Am. Cas. Co. of Reading, Pa.*, supra.

In *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192 (8th Cir. 1974), the court examined the question of how a plaintiff's negligence must relate to the "unauthorized signature." In *Bagby*, a stockbroker handled stock transactions on an open account with an attorney who was purportedly acting for a certain client in starting and maintaining the account. When the stockbroker sold some stock for the attorney's client and in payment drew some checks made payable to the client, it mailed the checks to the supposed attorney, in accordance with standard business practices. The attorney forged the endorsement and cashed the checks at a bank. The court found that although the stockbroker was negligent in having the checks issued in the first place, the negligence did not relate to the forgery itself and therefore § 3–406 did not apply.

▮ The *Bagby* case is somewhat clearer than ours since there delivery to a third party attorney once the check was issued, was in accordance with normal business practices and so was automatically not deemed negligent. But *Bagby* does show that a drawer's "negligence" in having checks issued at the prompting of a fraudulent party does not substantially contribute to a forgery. The U.C.C. seems to foresee a more direct type of contribution to a forgery. The one example of contribution to forgery of a signature of another that is given in Official Comment 7 of § 3–406 is also a clearer sort of contribution: mailing a check to a wrong person having the same name as the payee. We do not think that plaintiff's actions in trusting Londe and giving Londe a check which plaintiff had made payable to International Harvester

could be said to have substantially contributed to Londe's forgery. Plaintiff did nothing to put Londe in good position to commit a possible forgery, nor to give Londe any direct aid at all in forging the endorsement.

■ Furthermore, we conclude that the third element of § 3–406 is not met as a matter of law; the payor/drawee Lindell Trust did not pay the instrument "in accordance with the reasonable commercial standards" of its business.[2] The Treasurer's check was payable to the order of "International Harvester." The forged endorsement read:

> "Pay to the order of Michael Londe
> Roedel Brothers Internation (sic)
> Harvester Trucks
> (signed) Carle [sic] Roedel."

Even though the payor received the check after it had been endorsed by Continental, it was still readily apparent that the first endorsement was by someone other than the named payee. James Roedel at Roedel Brothers refused to accept the check because the check was not made out to them. When he consulted his own bank, they advised him not to accept the check for the same reason. Even the president of Continental told the cashier who first accepted the endorsement, that he made an error in judgment. These facts support our conclusion that neither banking institution adhered to reasonable commercial standards in accepting a check with such a patently irregular endorsement.

One case which is factually similar and instructs us as to commercial standards of banks regarding endorsements is a Louisiana case, *Trouard v. First. Nat. Bank of Lake Charles*, 247 So.2d 607 (La.App.1971). Since it is a Louisiana case, it was decided on the basis of the Negotiable Instruments Law rather than the U.C.C. Nevertheless, we find it helpful. In *Trouard*, a money order was payable to the order of "Chinchilla Producers Association, Inc." and the en-

dorsement was made by "Chinchilla Producers Association of Texas." The court said it was the duty of both the collecting and the drawee bank to require endorsement of the exact payee specified and concluded that the drawee was liable for negligence: "The bank was in a position to require the endorsement to be specifically made as it appeared on the face of the instrument." *Trouard*, supra, at p. 610. This case supports our determination that neither Lindell Trust nor Continental met commercial standards by paying over the irregular endorsement of this Treasurer's check.

The cases which deal with the "reasonable commercial standards" provision of § 3–406 do not discuss the need for an endorsement to be in exactly the same form as the payee specified on the face of the check. In one case, the court found that a bank had complied with reasonable commercial standards under § 3–406, noting that there was nothing on the face of the forged instrument to arouse the suspicion of the bank, nor was there any other irregularity in the transaction. The check was deposited by the ostensible payee who freely identified himself. *Dominion Construction Inc. v. First Nat. Bank of Maryland*, supra, at p. 76. This is vastly different from our case where there was an obvious irregularity on the first endorsement which should have aroused the suspicion of Lindell Trust.

One California case discusses the "reasonable commercial standards" provision of § 3–406 in some detail. In *Cooper v. Union Bank*, 9 Cal.3d 123, 107 Cal.Rptr. 1, 507 P.2d 609 (1973), an employee had forged his employer's signature on some endorsements. The court found that the employer's negligence was a bar to a conversion suit against the payor bank under § 3–406 since the record supported a finding that the bank acted in accordance with reasonable commercial standards:

---

2. There is no contention that Lindell Trust did not pay with the requisite "good faith" specified in § 3–406.

"Nothing on the face of the instruments would have led the bank to suspect they were irregular in any way. A single branch of a large bank, as the testimony indicated, may handle several thousand instruments bearing third party indorsements in a single day. Considering this burden, it would be commercially unreasonable to expect payor banks to undertake foolproof efforts to verify ostensibly valid indorsements." (Op. cit. at 9 Cal.3d 123, 137, 107 Cal.Rptr. 1, 12, 507 P.2d 609, 621)

Applying the realistic approach of the Cooper case, which recognizes the legitimate concerns of banks for efficiency, we still must conclude on the basis of the facts clearly set out in the record, that Lindell Trust did not take adequate precautions to disclose this forgery. In the Cooper case, the forgery was established to be so skillful that there was nothing about the check which could have aroused the suspicions of payor bank. In our case, on the other hand, the forged endorsement contained one typographical error, a misspelled name and was clearly not in the name of the named payee. Not only Continental, but also Lindell Trust as the payor, should have refused to accept the check with this endorsement. Lindell Trust's failure to inquire about the endorsement bars them from asserting the § 3–406 defense.

The second specific U.C.C. defense Lindell Trust and Continental contend should have been submitted to the jury is § 3–405(1)(c). This provision says:

An indorsement by any person *in the name of a named payee* is effective if . . . an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest. (Emphasis added.)

The defendant's argument is that the forged endorsement by Londe is effective against plaintiff because Londe was plaintiff's agent for the purpose of buying ambulances with the check and that Londe supplied the name of International Harvester intending that payee to have no interest.

■ We find that § 3–405(1)(c) does not apply to this situation, but not for all the reasons plaintiff argues. It does not matter that International Harvester was not "fictitious" as plaintiff contends. The U.C.C. draftsmen carefully avoided calling such a supplied name a "fictitious payee" as the precode law did. Official Comment 1, § 3–405. Neither does it matter that this situation is not the typical "padded payroll" case which the section was specifically meant to cover. Official Comment 4, § 3–405. The use of the word "supplied" renders the section broad enough to cover situations other than padded payroll cases. *New Amsterdam Cas. Co. v. First Pa. Banking & Trust Co.*, 451 F.2d 892 (3d Cir. 1971). Thirdly, it is not necessarily determinative that plaintiff is not technically the "drawer" as specified in the statute. Since this was a Treasurer's check, Lindell Trust was both the drawer and drawee. *Jerman*, supra, p. 92. But the intent of the nominal drawer is not determinative in deciding if the check was payable to someone not intended to have an interest. It is the intent of the purchaser's agent which controls, since the issuing bank has no personal interest in the identifying of the named payee. *United States Nat. Bank v. Bank of America*, 264 Cal.App.2d 871, 71 Cal.Rptr. 6, 7 (1968). Finally, we agree with defendants that there is at least a question of fact as to whether Londe was the agent of plaintiff as required by § 3–405. *Phoenix Die Casting Co. v. Manufacturers & Traders Trust Co.*, 50 Misc.2d 152, 269 N.Y.S.2d 890 (1966).[3] Also see *Jerman*, supra, where agency was found in a very similar situation.

■ The only reason we decide that § 3–405(1)(c) does not apply here as a mat-

---

**3.** *United States Nat. Bank v. Bank of America and Phoenix Die Casting Co. v. Manufacturers & Traders Trust Co.*, were both decided under the "fictitious payee" rule, the predecessor of § 3–405.

ter of law is because the forged endorsement was not "in the name of a named payee" as specified by the statute. The Treasurer's check was made payable to the order of International Harvester. Londe endorsed it in the name of "Roedel Brothers Internation (sic) Harvester Trucks (signed) Carle Roedel." In order for § 3–405(1)(c) to apply, the forged endorsement must be in the exact name of the named payee. *Travco Corp. v. Citizens Fed. Sav. & Loan Ass'n of Port Huron*, 42 Mich.App. 291, 201 N.W.2d 675 (1972).[4]

 The third and final specific U.C.C. defense the defendants allege is ratification under § 3–404. The relevant portion of this section provides:

"(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; . . .

"(2) Any unauthorized signature may be ratified for all purposes of this article."

Defendants contend that the trial court erred in refusing to allow them to amend their pleadings to include this § 3–404 defense. They aver that they produced evidence to establish the defense and should have been granted leave to amend their pleadings to conform to this evidence, as they requested under Rule 55.33(b), Mo. Rules of Civil Procedure (1974). We hold that the trial court correctly refused permission to amend since the evidence produced at trial did not establish the existence of a ratification. The evidence did show that plaintiff pursued Londe to recover payments for plaintiff's losses from the check. Yet this pursuit of Londe can in no way be deemed a "ratification" of the unauthorized endorsement under § 3–404. The statute refers to ratification by the person whose

name was forged. Plaintiff cannot "ratify" the unauthorized signature of another. "An unauthorized signature is wholly inoperative under § 3–404 unless *the person whose signature it purports to be* ratifies it or is precluded from denying it." (Emphasis added.) *Taylor v. Equitable Trust Co.*, 269 Md. 149, 304 A.2d 838, 842 (1973). See 2 Anderson U.C.C. § 3–404: 7 at p. 923 (1971). We have found no cases and defendants have cited none, where a court has found ratification by anyone other than the person whose signature was forged.

Continental also makes a somewhat related argument based on the common law doctrine of election of remedies. It contends that by pursuing Londe for payment on the $50,000 loan and recovering partial satisfaction, plaintiff elected his remedy and cannot now pursue the bank for recovery on the check. In support of this election of remedies argument, Continental cites the Missouri case of *United States Fidelity & Guaranty Co. v. Fidelity Nat. Bank & Trust Co.*, 232 Mo.App. 412, 109 S.W.2d 47 (1937). In that case, an agent of the plaintiff's assignor "padded the payroll," forged the endorsements and cashed the checks at defendant bank which charged the employer's account. The employer then recovered from the plaintiff surety company on its bond covering loss by reason of the dishonesty of an employee. The court held that plaintiff was barred from suing the bank which had paid over the forged endorsement because plaintiff's assignor had made an election of remedies by recovering on the surety bond for the wrongdoing of the employee. The court said the employer could have demanded payment of his money from the payor bank on the theory that the bank paid out its own money when it paid over the forged endorsements and thus had no right to charge the employer's account. Or, in the

---

4. In Travco Corp., one check was made payable to "L & B. Dist., c/o F. & B. Mitchell" and was endorsed in the name of "F. Mitchell" and "B. Mitchell." A second check was payable to "L. & B. Distr. Sales, 19704 West Seven Mile Road, Detroit, Michigan 48219" and was endorsed "For deposit only F. Mitchell." It was held that neither check was endorsed "in the named of a named payee."

alternative, the court said, the employer could have affirmed the act of the bank in paying out the money and pursued the employee on the grounds that he had the employer's money. The employer had pursued the money in the agent's hand and ultimately recovered from the agent's bondsman. The court found this to be an election between two inconsistent remedies which barred a suit against the payor bank.

There are several ways to distinguish the *United Fidelity & Guaranty* case from the instant case. For one thing, plaintiff did not recover full satisfaction for his losses from Londe, as the doctrine of election of remedies seems to require. *United States Fidelity & Guaranty Co.*, supra, at p. 49 and *Boserine v. Md. Cas. Co.*, 112 F.2d 409, 416 (8th Cir. 1940). It should be remembered that the purpose of the doctrine of election of remedies is to prevent double redress for a single wrong. *Twin City Fed. Sav. & Loan Ass'n v. Transamerica Ins. Co.*, 491 F.2d 1122, 1125 (8th Cir. 1974). Secondly, it is not established that plaintiff pursued Londe (as opposed to Lindell Trust) with full knowledge of all the pertinent facts which would enable him to make an intelligent choice. *Twin City Fed. Sav. & Loan Ass'n*, supra, at p. 1125; *United States Fidelity & Guaranty*, supra, at p. 49; *Autocar Sales & Service Co. v. Holscher*, 11 S.W.2d 1072 (Mo.App.1928).

Finally, we feel that the doctrine of election of remedies should not apply because the two remedies pursued by plaintiff—recovery from Londe and recovery from the payor bank—should not be viewed as inconsistent remedies as they were in *United States Fidelity & Guaranty*, supra. The court in *United States Fidelity & Guaranty* felt that pursuit of the forger and pursuit of the payor bank were inconsistent for the following reason:

"[E]ither defendant [payor bank] had [the employer's] money and was liable to it for money had and received or [the forger] had it and was liable for money had and received. Obviously, both could not have the same money at the same time." (Op. cit. at p. 49).

Thus, the court's reasoning in that case can probably be explained by the fact that the suit was for money had and received.[5] In the instant case we are not dealing with a suit for money had and received. We are dealing with contract causes of action and the U.C.C. which makes it clear that a bank has contractual liabilities and liabilities on negotiable instruments, regardless of any causes of action a bank customer might have against third parties. We do not see how seeking recovery from Londe on their ambulance purchase contract or on Londe's bad check could be deemed "inconsistent" with seeking recovery from Lindell Trust on their contract on the cashier's check. Lindell Trust contracted with purchaser plaintiff that the Treasurer's check would be paid to the named payee. Since the check was paid on a forged endorsement, Lindell Trust has an "undoubted liability to the purchaser" of the check. *Jerman*, supra, at p. 92. We see no need to trace the proceeds of the Treasurer's check into the hands of either Londe or the payor. Plaintiff has consistent causes of action against both. Since the recovery theories are consistent, the suit against Lindell Trust is not barred by the election of remedies doctrine even though partial recovery was received from Londe. *Twin Cities Fed. Sav. & Loan Ass'n*, supra, at p. 1125.

Since we have rejected all of the defenses jointly asserted by the defendants and have concluded that Lindell Trust is liable for paying out the proceeds of the Treasurer's check over the forged endorsement, we must now establish the amount of the liability. This issue relates to the first contention made at the rehearing.

5. This court distinguished *United States Fidelity & Guaranty Co.*, in part on the same grounds in *Aetna Cas. & Surety Co. v. Lindell Trust Co.*, 348 S.W.2d 558, 566 (Mo.App.1961).

In our earlier opinion, we found that the liability of Lindell Trust (and ultimately Continental) should be reduced because plaintiff had received a partial recovery of his losses from Londe, the forger. Plaintiff argued at the rehearing that we exceeded our authority by ordering the $50,000 judgment reduced to $14,500, because defendants did not seek such relief on appeal. This contention is without foundation. Both defendants argued strenuously in their appellate briefs that they could not be liable for $50,000 on the check when plaintiff had already recovered $35,500 of their loss from Londe. Lindell Trust made the following statement in its brief: "To allow Twellman to recover the face amount of the Treasurer's check, plus the $35,500.00 which he collected from Londe would constitute unjust enrichment and would be a windfall to the plaintiff." It is true that both defendants made objection to the trial court's decision to take the issue of amount of damages away from the jury, but Continental submitted in its statement of conclusion "that the judgment below should be reversed in part and remanded with instructions to reduce the amount of the judgment to $14,500 plus interest." Thus, it is clear that the relief we granted was requested.

As for the substance of this damage issue, we determine that the reduction of the judgment as a matter of law is warranted. The evidence clearly shows that Londe made three payments to plaintiff between December 28 and January 20, which totaled $35,500. Immediately after each payment was made, plaintiff took those payments to Mr. Rieman at Lindell Trust to apply toward his outstanding loans. Plaintiff testified that he did not tell Rieman to which of his $121,000 in notes to apply the payments. The $121,000 total consisted of the $50,000 note of December 15 which was undertaken to cover the Treasurer's check plus a $71,000 note of December 3, which had been undertaken in connection with a different business transaction, also involving Londe. Mr. Rieman

of Lindell Trust testified that he applied the three payments totaling $35,500 to the $50,000 note of December 15, because he assumed plaintiff had been trying to get payment for the December 17 bad check that was intended to cover that note. One of the receipts given by Lindell Trust for the three payments expressly stated that the money had been applied to the December 15 note. The bank's liability ledger showed that all three payments had been applied to the December 15 note. Lindell Trust sent plaintiff a debit memorandum which informed plaintiff that the $50,000 note had been reduced to $14,500. Lindell Trust was perfectly justified in making these applications to the December 15 note. If a debtor owes a creditor on more than one obligation and fails to specify the account to which a payment is to be applied, then the creditor may make the application. *Title Ins. Corp. of St. Louis v. United States*, 432 S.W.2d 787, 791 (Mo. App.1968); *Madison v. Dodson*, 412 S.W.2d 552, 556 (Mo.App.1967); *Herrman v. Daffin*, 302 S.W.2d 313, 315 (Mo.App.1957). The uncontroverted evidence shows that plaintiff's loss on the December 15 note had been reduced to $14,500 because of the payments received from Londe.

The facts here are clearly distinguishable from those in *Tubin v. Rabin*, 382 F.Supp. 193 (N.D.Tex.1974), supplemental opinion at 389 F.Supp. 787 (N.D.Tex.1974). In the *Tubin* supplemental opinion, the court discussed the issue of partial recovery. The payee had specially endorsed a cashier's check to a man named Wyche and to a company. The collecting bank cashed the check over the forged signature of Wyche. The court refused to reduce the liability of the collecting bank by an amount which Wyche had recovered from the company, which was involved with the forgeries. The court held that § 3–404(1) did not apply. Specifically, the money recovered by Wyche was found to relate to a separate, special arrangement between Wyche and the company. There was no relationship between the amount recovered by Wyche and the

amount of the cashier's check. In our case, as discussed above, the evidence does show such a relationship between the $35,500 recovered from Londe and the $50,000 Treasurer's check.

However, plaintiff maintains that the judgment cannot be reduced, due to the provisions of § 3–419 of the Uniform Commercial Code. The applicability of this section was argued by the parties at the rehearing. The relevant parts of § 3–419 read as follows:

> "(1) An instrument is converted when . . . (c) it is paid on a forged endorsement.

> "(2) In an action against a drawee under subsection (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) the measure of liability is presumed to be the face amount of the instrument."

Plaintiff argues that this statute means that Lindell Trust, the drawee in this case, is absolutely liable for the face amount of the instrument, i. e., $50,000, and that this amount cannot be reduced by the $35,500 repaid to plaintiff by the forger. We reject this argument.

First of all, it is not at all clear that the language of § 4–319(2) precludes the kind of set-off that is suggested by the facts of this case. Official Comment 4 of § 3–419 offers some clarification of the "face amount" language in the statute:

> "Evidence is admissible to show that for any reason such as insolvency or the existence of a defense the obligation is in fact worth less, or even that it is without value. In the case of the drawee, however, the presumption is replaced by a rule of absolute liability."

This Comment indicates that the statute was meant to prevent a defendant drawee from going beyond the face of the instrument in order to limit its liability. Any factors such as insolvency or other defenses such as inadequate consideration which would affect the value of the instrument, are not to be considered. This is not the situation in the present case. The "measure" of Lindell Trust's liability is the $50,000 face amount of the instrument. Defendants do not argue that a Treasurer's check was, in fact, worth less due to any external factors. They are merely pointing out that plaintiff has already been partially reimbursed for his losses on the instrument. We do not believe that the statute should be read so narrowly as to prevent a set-off in the amount already recovered by plaintiff.

An analogous case is *Starkey Construction, Inc. v. Elcon, Inc.*, 248 Ark. 958, 457 S.W.2d 509 (1970). In that case, the defendant drawee bank had paid checks over the forged endorsements of the payees. The persons whose names were forged had ultimately been paid the money due them from the proceeds of the checks by the forgers. The Starkey court said it did not believe the legislators intended to hold a drawee liable where the money actually reached the parties intended by the drawer. Similarly, we do not believe the draftsmen of the U.C.C. intended by the language of § 3–419(2) to hold a payor bank liable for the full amount of a check where the remitter has recovered a partial reimbursement from the forger.

However, it is probably not necessary to construe the conversion statute at all. We believe that plaintiff is not a proper party to sue Lindell Trust for conversion, and therefore § 3–419 is inapplicable. The parties argued this issue at the rehearing. The Uniform Commercial Code is silent as to who may sue for conversion under § 3–419. But the Official Comments to the section make repeated references to "holders"[6] and indicate that a holder is the in-

---

6. The term is defined in § 1–201(20): " 'Holder' means a person who is in posses-sion of a document of title or an instrument or an investment security drawn, issued or

tended proper party to sue. For example, Comment 2 declares that "[a] negotiable instrument is the property of the holder." This declaration should be read in conjunction with Comment 3 which states that payment on a forged endorsement "is an exercise of dominion and control over the instrument inconsistent with the rights of the *owner*, and results in liability for conversion." (Emphasis added.) We believe that the "owner" of a negotiable instrument is the holder or payee, who could properly sue for conversion. Plaintiff is the remitter or purchaser of the Treasurer's check in issue here. He is in the place of the drawer, having directed Lindell Trust to draw the check. Plaintiff had no right to possession at the time of conversion. A case which offers some guidance on this point is an early U.C.C. case, *Stone & Webster Engineering Corp. v. First Nat. Bank & Trust Co. of Greenfield*, 345 Mass. 1, 184 N.E.2d 358 (1962). In *Stone & Webster*, it was held that a drawer of an ordinary check was not a proper party to sue a *collecting* bank for conversion [7] for having paid over a forged endorsement. Although the suit was against a collecting bank, the reasoning of the *Stone & Webster* court is helpful. The court determined that the drawer should sue its drawee under Article Four, and the drawee could advance U.C.C. defenses against the drawer and then pursue the collecting bank on a breach of warranty theory. In so holding, the court determined that under the U.C.C. the holder is the owner of the instrument and is entitled to sue for conversion. The plaintiff drawer could not sue for conversion since he had no valuable rights in the check:

"Here the plaintiff drawer of the checks, which were never delivered to the payee . . . had no valuable rights in them. Since, as we have seen, it did not have the right of a payee or subsequent holder

endorsed to him or to his order or to bearer or in blank." It should be noted that a payee in possession of a check would be a holder.

to present them to the drawee for payment, the value of its rights was limited to the physical paper on which they were written, and was not measured by their payable amounts. (Citations omitted)." *Stone & Webster Engineering Corp.* at 184 N.E.2d 358, 362.

The court later noted that "[n]o right of ownership in the plaintiff is apparent," and therefore the demurrer to the conversion count was correctly sustained. *Stone & Webster Engineering Corp.*, supra, at 358, 364.

■ We agree with the above reasoning. A drawer, or here, the remitter who has directed the drawer, is not a proper party to sue for conversion. In Missouri, in order to maintain a suit for conversion, the plaintiff must have title to, or a right of property in, and a right to the immediate possession of the property concerned at the time of conversion. *Osborn v. Chandeysson Elec. Co.*, 248 S.W.2d 657, 663 (Mo.1952); *Kessler v. Reed*, 481 S.W.2d 559, 562 (Mo. App.1972). Thus, a holder or a party such as a payee would be a proper party to sue for conversion. Plaintiff, the remitter, had no valuable property right or right of possession of the Treasurer's check at the time of conversion. Therefore, he is not entitled to sue for conversion. See *Cooper v. Commonwealth Trust Co.*, 142 Mo.App. 610, 122 S.W. 791 (1909).

■ Plaintiff is entitled to sue Lindell Trust for breach of contract, rather than on a conversion theory. When it paid over a forged endorsement, Lindell Trust breached its promise to the purchaser (plaintiff) that it would pay the $50,000 to the named payee on presentation of the check. A case which is directly on point is *Jerman v. Bank of America Nat. Trust & Sav. Ass'n*, 7 Cal. App.3d 882, 87 Cal.Rptr. 88 (1970). The *Jerman* court allowed the purchaser of a

7. The *Stone & Webster Engineering Corp.* case involved both a cause of action for conversion and a cause of action for money had and received which was based on the waiver of the tort of conversion.

cashier's check to recover against the payor bank when it paid over a forged endorsement. The majority opinion cites the conversion statute, § 3–419 but the language of the decision clearly appears to be concerned with breach of contract. Associate Justice Fleming in his concurring opinion specifically points out that the suit is for breach of contract rather than for conversion and makes the following comment:

> "Since the right of the purchaser to recover her consideration is based on contract she has no need to rely on tort claims for conversion, either her own or those of the payees. Hence defenses available in conversion and the measure of damages for such claims are immaterial." Jerman, concurring opinion of Associate Justice Fleming at 7 Cal.App.3d 882, 891, 87 Cal.Rptr. 88, 95.

We agree with this analysis and conclude that purchaser plaintiff cannot sue for conversion under § 3–419.

Plaintiff relies on *Tubin v. Rabin,* supra, where the owner of a cashier's check was allowed to recover from a collecting bank which paid over a forged endorsement. In *Tubin,* plaintiff had his attorney purchase a cashier's check for him. Under plaintiff's direction, the attorney was made the payee. The attorney specially endorsed the check to the order of a company and a third party. The third party's signature was forged. The *Tubin* court concluded that plaintiff was the rightful owner of the check and could sue in conversion. However, it is important to note that the plaintiff's attorney/agent was the named payee whose special endorsement was not properly observed. In our case, the payee (who may sue for conversion) was not the agent of the purchaser. Furthermore, we do not agree with the *Tubin* court that § 3–419(1) states the principle of "conversion on a contract." The court clouds the clear distinction between tort and contract. As Official Comment 2 of § 3–419 states, "[t]he action is not on the instrument, but in tort for its conversion."

As we have determined above, the purchaser of a Treasurer's check is not a proper party to sue for the tort of conversion. His suit is for breach of contract and he may not recover more than his losses on the Treasurer's check, i. e., $14,500. See *Boten v. Brecklein,* 452 S.W.2d 86, 93 (Mo.1970); *Dingman v. Elizabeth Arden Sales Corp.,* 284 S.W.2d 16, 18 (Mo.App.1955).

The last point we must consider is the question of Continental's liability as collecting bank to Lindell Trust as the payor bank whose liability to plaintiff has been established at $14,500. Continental accepted the Treasurer's check, depositing $50,000 in Londe's business account and made its own endorsement before forwarding the check to Lindell Trust:

"PAY ANY BANK, P.E.G.

CONTINENTAL BANK & TRUST CO.

RICHMOND HEIGHTS, MO."

First, we note that the fact that a Treasurer's check drawn by the payor bank is involved does not change the collecting bank's liability. *Thieme v. Seattle-First Nat. Bank,* 7 Wash.App. 845, 502 P.2d 1240, 1244 (1972); *Jerman,* supra, at 87 Cal.Rptr. 88, 91. Secondly, the initials "P.E.G." which stand for "Prior Endorsements Guaranteed" in banking parlance are no longer needed and add nothing to the liability of a collecting bank under the U.C.C., *Society Nat. Bank of Cleveland v. Capital Nat. Bank,* 30 Ohio App.2d 1, 281 N.E.2d 563, 566 (1972). As a collecting bank which accepted the Treasurer's check, Continental automatically gave warranties under the U.C.C. Specifically, Continental warranted to Lindell Trust that it had good title to the instrument and that all signatures on the instrument were genuine or authorized. § 3–417(1)(a); § 3–417(2)(a) and (b), § 4–207(1)(a), § 4–207(2)(a) and (b). See *Society Nat. Bank,* supra, at p. 565; *Myers v. First Nat. Bank of Scotia,* 42 A.D.2d 657, 345 N.Y.S.2d 204 (1973) and *Mississippi Bank & Trust Co. v. County Supplies & Diesel Service, Inc.,* 253 So.2d 828 (S.Ct.Miss.1971).

Continental, however, argues that it has a defense to its liability under § 4–207(4),[8] which should have been submitted to the jury. The purported defense reads as follows:

> "(4) Unless a claim for breach of warranty under this section is made within a reasonable time after the person claiming learns of the breach, the person liable is discharged to the extent of any loss caused by the delay in making claim."

Continental contends that Lindell Trust failed to notify Continental within a reasonable time after learning of the breach and Continental was injured by the delay. After examining the dates involved, we conclude that this contention is without merit.

It is unclear who first questioned the authenticity of the Roedel endorsement—plaintiff testified that Mr. Rieman at Lindell Trust first brought up the subject and indicated that there might be a problem with the endorsement sometime during the week of December 20. Mr. Rieman, on the other hand, said the first indication he had that the endorsement might be a forgery was when plaintiff asked him an apparently hypothetical question concerning banking procedures on forged endorsements. At that time, Rieman told him the bank would need an affidavit of forgery. Rieman said he did not know anything specific about problems with the Roedel endorsement until plaintiff called him on February 5. At that time, plaintiff told Rieman the endorsement was definitely a forgery and that he had obtained an affidavit from Carl Roedel to that effect. Rieman notified Continental on that day—February 5—that Lindell Trust was returning the check because of a forged endorsement. The first affidavit of forgery dated February 2 was deemed inadequate by Lindell Trust, so plaintiff obtained a second affidavit on Lindell Trust's own form on February 7. Rieman sent written notification of the forgery and a copy of the affidavit to the Federal Reserve on February 7 to be forwarded to Continental. Rieman testified that Lindell Trust needed the written affidavit of forgery because it could not act on someone's oral word.

 This evidence establishes that Lindell Trust was first informed of the existence of a written affidavit of forgery on February 2 at the earliest. They gave Continental oral notice of the forgery and their potential claim on February 5. They forwarded the affidavit which they deemed adequate on the same day it was signed, i. e., February 7. We hold as a matter of law that Lindell Trust notified Continental within a reasonable time after Lindell Trust learned of the breach within the meaning of § 4–207(4). Section 4–207(4) cannot be a bar when there was so little delay between the time an affidavit of forgery was received by the payor and the time the collecting bank was notified. *Birmingham Trust Nat. Bank v. Central Bank & Trust Co.*, 49 Ala.App. 630, 275 So.2d 148 (1973), cert. den., 290 Ala. 362, 275 So.2d 153 (1973). Therefore, Continental is liable to Lindell Trust for breach of warranty in the amount of the judgment in favor of plaintiff against Lindell Trust, i. e., $14,500.00.

Judgment for plaintiff against Lindell Trust and for Lindell Trust against Continental affirmed. Cause is remanded with instructions to the trial court to reduce the amount of both judgments to $14,500 plus interest.

SIMEONE, P. J., and GUNN, JJ., concur.

---

8. Section 4–207 which deals precisely with a collecting bank's liability is more specific than the Art. 3 warranties. Therefore, the defense found in § 4–207(4) which is not found in § 3–417 should govern here, if it in fact exists. See 2 Anderson, § 3–417: 3 at p. 1020 (1971); § 4–102.