**C.A.L., INC., Respondent,**

v.

**David WORTH, Jerry C. Garrett, June Garrett, D.J. Video Systems, Inc., American Bank of Raytown and Kim Alewel, Appellants.**

**No. WD 42459.**

Missouri Court of Appeals,
Western District.

May 21, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1991.

Application to Transfer Denied
Sept. 10, 1991.

James W. Humphrey, Jr., Kuraner & Schwegler, Kansas City, for American Bank of Raytown and Kim Alewel.

Mike Thompson, Mitchell, Kristl & Lieber, Kansas City, for C.A.L., Inc.

Jerry L. Garrett, June Garrett and D.J. Video Systems, Inc., pro se.

Before TURNAGE, P.J., and
LOWENSTEIN and BRECKENRIDGE, JJ.

TURNAGE, Presiding Judge.

CAL brought suit against David Worth, Jerry C. Garrett, June Garrett, D.J. Video Systems, Inc., American Bank of Raytown and Kim Alewel. The suit sought recovery from Worth, the Garretts and D.J. Video for amounts received by them in a kickback scheme. Recovery from American Bank and Kim Alewel, its teller, was sought for amounts paid by the Bank on forged endorsements on CAL checks and cashier's checks purchased by CAL. The court entered judgment on a jury verdict against American Bank for $11,900.00, against Kim Alewel, Jerry Garrett, June Garrett and D.J. Video Systems for $59,000.00 and punitive damages against Jerry Garrett in the amount of $35,000.00 and for punitive damages against June Garrett in the amount of $35,000.00. All parties except Worth appeal.[1] The decisive issues on this appeal are raised by American Bank and Kim relative to error in the verdict directing instructions against them. Affirmed in part and reversed and remanded in part.

CAL was organized for the primary purpose of leasing automobiles. David Worth was the general manager of CAL and by corporate resolution Worth had authority to write checks on the CAL bank account. No other signature on a CAL check was required.

---

1. The appeal of the Garretts and D.J. Video was dismissed for failure to perfect their appeal.

Worth died in 1986 and the case against him was dismissed.

Kim was a teller at American Bank and was the daughter of the Garretts. Worth and the Garretts owned D.J. Video, which placed video operated games in various businesses. The Garretts, Worth, and D.J. Video all had bank accounts at American.

CAL alleged that Worth and the Garretts engaged in a conspiracy by which Worth and the Garretts improperly shared profits from the sale of cars belonging to CAL. There was also an allegation that part of the money improperly received from CAL by Worth and the Garretts went into D.J. Video. However, because the appeal by the Garretts and D.J. Video has been dismissed it is not necessary to detail the evidence relating to those allegations. CAL in its appeal does raise two points relating to the Garretts which complain of evidentiary rulings. However, CAL obtained judgment for substantial damages from the Garretts and no prejudice is alleged or found in the points raised by CAL relating to the Garretts. The judgment against the Garretts and D.J. Video is affirmed.

CAL has appealed from the judgment entered in its favor against American Bank and Kim and raises evidentiary rulings and the refusal of an instruction for punitive damages against American. The decisive points on this appeal are raised by American Bank and Kim in their appeal from the judgment entered against them.

In March, 1984, David Worth was authorized by CAL to purchase 12 cashier's checks from Mid–American Bank and Trust Company in Shawnee Mission, Kansas, where CAL maintained its bank account. The checks were to pay for the purchase of automobiles which CAL was to lease to various parties. The 12 checks totaled $146,100.00. Rather than using the checks to pay for the purchase of automobiles, Worth had the checks made payable to Joe Lake Enterprises. Worth forged the name of the payee and presented the checks to Kim in her capacity as a teller at American Bank in March and April, 1984. Worth received part cash and the remainder was deposited in various accounts at American.

In addition to the cashier's checks, Worth wrote three checks on the CAL bank account, and Charles Lillis, the owner of CAL, wrote two checks on CAL. Four of these checks were paid by Kim at American on forged endorsements. The fifth was deposited without an endorsement.

In 1985, the owner of CAL determined that Worth was improperly appropriating money from CAL and fired him. Worth died in 1986.

The theory of CAL at trial was that Worth, the Garretts and Kim were involved in a conspiracy to deprive CAL of its money through the practice of Worth writing checks, having the endorsement of the payee forged and presenting the checks to Kim at American Bank for either cash or deposit in accounts at American Bank in which the Garretts and Worth had an interest.

■ CAL submitted its case against American Bank based on common law negligence by Instruction No. 9. That instruction required the jury to find that Kim was an employee of American, that Kim failed to require the presenter of the five checks written by Worth and Lillis to endorse them. The instruction required the jury to find that by failing to require the presenter to endorse the checks Kim was negligent and that such negligence caused damage to CAL. American appeals and contends that this instruction was in error because the checks were payable to payees who the drawer of the check did not intend to have any interest in such check and it is thereby entitled to the defense of § 400.3–405, RSMo 1986, a part of the Uniform Commercial Code. That section provides:

(1) An indorsement by any person in the name of a named payee is effective if

(a) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied him with the

name of the payee intending the latter to have no such interest.

(2) Nothing in this section shall affect the criminal or civil liability of the person so indorsing.

The defense asserted by American under this section is known as the "padded payroll" defense. Sections (1)(b) and (1)(c) apply in this case because Worth prepared the checks, or supplied the payee's name to Lillis for checks payable to a payee that Worth did not intend to have any interest in the check. In *Consol. Public Water Supply v. Farmers Bank*, 686 S.W.2d 844, 853[17] (Mo.App.1985), the court held that this section shifts the risk of loss from the drawee bank to the drawer in a padded payroll case. The court stated that the absence in this section of a requirement that a bank "act reasonably or with ordinary care frees the bank from the consequences of its own ordinary negligence when it pays an instrument over a forged endorsement in a situation covered by § 3–405." *Id.* at 852[15]. In this case, American is a collecting bank, not the drawee bank, but *American Nat'l Bank in St. Louis v. Seidel*, 622 S.W.2d 19, 21 (Mo.App. 1981), extended the padded payroll defense to a collecting bank.[2]

CAL contends its instruction was proper and relies upon pre-U.C.C. cases which hold that a bank could be held for negligence for accepting a check with a forged endorsement. Obviously, these cases have no application since the passage of the U.C.C. in Missouri.

■ The giving of Instruction No. 9, based as it was on common law negligence, was improper under the holding in *Consol. Public Water Supply*. In that case, the court held at 686 S.W.2d at 853[19]:

To hold that one may use a common law negligence action to recover in a padded payroll case is to allow § 3–405 to become a virtual nullity. It is inconceivable that those who drafted the U.C.C. intended to forbid recovery under the Code, but to permit the same remedy for the same wrong outside the Code.

American was entitled to rely on the padded payroll defense under § 400.3–405. Under the holding in *Consol. Public Water Supply* the padded payroll defense will prevail over an action based upon common law negligence for a bank accepting a forged endorsement since the passage of the U.C.C. Thus Instruction No. 9, based on common law negligence, was erroneous.

■ Kim contends that Instruction No. 23, which was the verdict director submitted against her and the Garretts and D.J. Video, is erroneous because it allows recovery against Kim for accepting for deposit and cash the 12 cashier's checks which contained forged endorsements. CAL contends the instruction was a proper submission on a theory of conversion. Kim contends that CAL has no standing to bring an action on the cashier's checks for conversion.[3] This question was considered in *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 97[25] (Mo.App.1976). The court in that case discussed a treasurer's check which for all practical purposes is the

**2.** *Consol. Public Water Supply* held that for a forged endorsement to be effective under § 3–405, the endorsement must be exactly the same as the named payee. *Id.* at 850[6]. CAL contends that some of the checks were not endorsed exactly in the name of the payee. This argument largely centers on the fact that the payee's names were written and another name was written below the name of the payee. In *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. NCNB Nat'l Bank of N.C.*, 695 F.Supp. 162 (S.D.N.Y.1988), *affd. without op.*, 872 F.2d 1021 (CA2 NY1989), the court held that adding under the name of the payee on the endorsement a further statement did not deprive the bank of its defense under § 3–405. In this case there is no reason to hold that the endorsement of the

name of the payee is vitiated by the fact that an individual's name appears under the endorsement.

**3.** CAL also argues a conspiracy theory and seems to contend that conspiracy is an actionable wrong. Conspiracy is not of itself actionable, but the conspiracy only bears on the liability of the alleged conspirators as joint tortfeasors after some wrongful act has been committed. *Bockover v. Stemmerman*, 708 S.W.2d 179, 182[5] (Mo.App.1986). Further, there must be clear and convincing evidence that a conspirator knowingly took any action or did any act to carry out the unlawful purpose of the conspiracy. *Chmieleski v. City Products Corp.*, 660 S.W.2d 275 (Mo.App.1983).

same as a cashier's check. The court explained that the purchaser of the treasurer's check was the remitter and stood in the place of the drawer because he directed the bank to draw the check. The court stated that in order to maintain a suit for conversion the plaintiff must have title to, or a right of property in, and a right to the immediate possession of, the property concerned at the time of conversion. *Id.* at 97. The court held that the owner of the treasurer's check was the holder or payee and such party would be the only proper party to sue for conversion. *Id.* The court held that the plaintiff in that case, who was the remitter by virtue of having purchased the treasurer's check, had no valuable property right in the check nor did it have the right of possession of the check at the time of its conversion. *Id.* The court held for that reason that the purchaser of the treasurer's check was not the proper party to bring suit in conversion. Rather, the court said that the purchaser of the treasurer's check had a cause of action against the bank from which he purchased the check for a breach of contract.

■ In this case, CAL contends that Kim converted the funds represented by the cashier's check. CAL purchased the cashier's checks from Mid–American which means CAL is the remitter and Mid–American is the drawer. *Twellman* held that the drawer, or as here, the remitter who has directed the drawer, is not a proper party to sue for conversion. The court explained that the U.C.C. is silent as to who may sue for conversion under § 3–419, but the Official Comments make repeated reference to holder and indicate that a holder is the intended proper party to sue. *Id.* at 96–97. The court further referred to Comment 3 to § 3–419 which states that payment on a forged endorsement "is an exercise of dominion and control over the instrument inconsistent with the rights of the *owner*, and results in liability for conversion." (Emphasis in original.) *Id.* at 97. The court held that the owner is the holder or payee who could sue for conversion. Thus

the remitter, who has purchased a cashier's check, is not the owner of the check and is not the proper party to sue for conversion. Under the holding in *Twellman,* CAL had no cause of action against Kim or American for conversion for paying the cashier's checks on a forged endorsement. CAL must recover, if at all, by an action in contract against Mid–American Bank for breach of its promise to CAL as the purchaser that it would pay the named payee on presentation of the cashier's check. *Id.* at 97[26].

Because of the error in the verdict director against American and in the verdict director against Kim the judgment against them must be reversed.

The judgment in favor of CAL against the Garretts and D.J. Video is affirmed. The judgment in favor of CAL and against American Bank and against Kim is reversed and this cause is remanded. Costs are assessed against CAL.[4]

All concur.

---

4. The other points raised by CAL need not be discussed because of the uncertainty of another trial. In any event the parties have the benefit of the briefs.